<u>UNITED STATES DISTRICT COURT</u>
<u>SOUTHERN DISTRICT OF NEW YORK</u>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
        :

CARTICA MANAGEMENT, LLC, et al.,    :

        :

        Plaintiffs,    :

        :    No. 14-CV-2258 (PKC)

    v.    :

        :    **ORAL ARGUMENT REQUESTED**

CORPBANCA S.A., et al.,    :

        :

        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE**
<u>**DIRECTORS' AND OFFICERS' SUPPLEMENTAL MOTION TO DISMISS**</u>



GIBSON, DUNN & CRUTCHER LLP
ADAM H. OFFENHARTZ
DAVID J. KERSTEIN
JAMES M. THOMPSON
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

SUMMARY OF ALLEGATIONS THAT MUST BE ACCEPTED AS TRUE.......................... 4

    I.    The Individual Defendants...................................................................... 5

    II.   The Individual Defendants Made And Approved A Series Of Materially False
          And Misleading Statements .................................................................. 6

ARGUMENT ........................................................................................... 9

    I.    Cartica Effectively Served Defendants...................................................... 9

          A.    Cartica Served Saieh Guzmán, Massú, And Gigogne Via FedEx Mailed By The
                Clerk Of Court For This District................................................... 9

          B.    Cartica Also Served Saieh Guzmán At His Residence In New York................. 11

    II.   This Court Has Personal Jurisdiction Over Saieh Guzmán ......................... 13

    III.  Cartica Has Pled Both Primary And Control Person Liability For Securities
           Fraud Committed By Saieh Guzmán, Massú, Gigogne, and Verdegaal...................... 16

          A.    Cartica Has Pled A Section 10(b) Claim Against Saieh Guzmán, Verdegaal,
                Massú, And Gigogne ........................................................... 17

          B.    Cartica Has Properly Pled A Claim For Control Person Liability...................... 24

CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*131 Main St. Assocs.*,
  897 F. at 1524 n.15 ............................................................................ 12, 13

*ABKO Indus., Inc. v .Lennon*,
  52 A.D.2d 435 (1st Dep't 1976) ........................................................... 15

*Absolute Activist Master Value Fund, Ltd. v. Ficeto*,
  2013 WL 1286170 (S.D.N.Y. May 28, 2013) ....................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 17

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998) .................................................................. 24

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .............................................................................. 14

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) .................................................................. 23

*City of Pontiac v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012) .............................................. 22, 23

*City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................... 23

*Dai Nippon Printing Co., Ltd. v. Melrose Pub. Co., Inc.*,
  113 F.R.D. 540 (S.D.N.Y. 1986) ........................................................... 15

*Derensis v. Coopers & Lybrand Chartered Accountants*,
  930 F. 1003 (D.N.J. 1996) ..................................................................... 15

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  847 F. Supp. 2d 624 (S.D.N.Y. 2012) ................................................... 18

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187
  (2d Cir. 2009) ........................................................................................ 19

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*,
  2005 WL 1123755 (S.D.N.Y. May 11, 2005) ....................................... 11

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) ................................................................. 19

*Freedman v. Value Health, Inc.*,
  958 F. Supp. 745 (D. Conn. 1997) ........................................................ 20

TABLE OF AUTHORITIES (*cont'd.*)

Page(s)

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000) ................................................................. 18

*Gudavadze v. Kay*,
    556 F. 2d 299 (S.D.N.Y. 2008) ............................................................. 12

*Hein v. Cuprum, S.A. de CV*,
    136 F. Supp. 2d 63 (N.D.N.Y. 2001) ..................................................... 11

*Ho v. Duoyan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ................................................... 24

*Howard Johnson Int'l v. Wang*,
    7 F. Supp. 2d 336  (S.D.N.Y. 1998) ...................................................... 13

*In re Alstom SA*,
    406 F. Supp.2d 346 (S.D.N.Y. 2005) ............................................... 14, 15

*In re Am. Int'l Group, Inc. 2008 Secs. Litig.*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010) ................................................... 24

*In re Boeing Sec. Litig.*,
    40 F. Supp. 2d 1160 (W.D. Wash. 1998) ............................................... 21

*In re CINAR Corp. Sec. Litig.*,
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) ................................................... 16

*In re Honeywell Int'l, Inc. Sec. Litig.*,
    182 F. Supp. 2d 414 (D.N.J. 2002) ....................................................... 21

*In re Initial Pub. Offering Secs. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................... 25

*In re Parmalat Sec. Litig.*,
    414 F. Supp. 2d 428 (S.D.N.Y. 2006) ................................................... 14

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005) ................................................... 16

*In re Pfizer Inc. Secs. Litig.*,
    936 F. Supp. 2d 252 (S.D.N.Y. 2013) ................................................... 23

*In re Rent-Way Secs. Litig.*,
    209 F. 2d 493 (W.D. Pa. 2002) ............................................................. 24

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. 2d 334 (D. Md. 2004) ................................................................. 15

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) .............................................. 22, 23

*In re Sprint Corp. Sec. Litig.*,
    232 F. Supp. 2d 1193 (D. Kan. 2002) ................................................... 21

TABLE OF AUTHORITIES (*cont'd.*)

Page(s)

*In re Stillwater Capital Partners Inc. Litig.*,
   853 F. Supp .2d 441 (S.D.N.Y. 2012) ..................................................................... 23

*In re UBS AG Secs. Litig.*,
   2012 WL 4471265 (Sept. 28, 2012) ....................................................................... 23

*In re Vivendi Universal, S.A.*,
   2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) ........................................................... 20

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003) .................................................................... 24

*IntelliGender, LLC v. Soriano*,
   2012 WL 215066 (E.D. Tex. Jan. 24, 2012) ........................................................... 10

*Itoba Ltd. v. LEP Grp. PLC*,
   930 F. Supp. 36 (D. Conn. 1996) ........................................................................... 14

*IUE AFL-CIO Pension Fund v. Herrmann*,
   9 F.3d 1049 (2d Cir. 1993) .................................................................................... 17

*Janus Capital Group, Inc. v. First Derivative Traders*,
   131 S.Ct. 2296 (2011) ..................................................................................... 22, 23

*Jung v. Neschis*,
   2003 WL 1807202 (S.D.N.Y. Apr. 7, 2003) ........................................................... 11

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) .................................................................................. 19

*Karlin v. Avis*,
   326 F. Supp. 1325 (E.D.N.Y. 1971) ...................................................................... 12

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*,
   22 F.3d 634 (5th Cir. 1994) ................................................................................... 10

*Landry v. Price Waterhouse Chartered Accountants*,
   715 F. Supp. 98 (S.D.N.Y. 1989) .......................................................................... 15

*Laufer v. Ostrow*,
   55 N.Y.2d 305 (N.Y. 1982) ................................................................................... 15

*Levitt v. Bear Stearns & Co., Inc.*,
   340 F.3d 94 (2d Cir. 2003) .................................................................................... 17

*Mayatextil, S.A. v. Liztex U.S.A., Inc.*,
   1994 WL 198696 (S.D.N.Y. May 19, 1994) ........................................................... 11

*Maywalt v. Parker & Parsley Petroleum Co.*,
   808 F. Supp. 1037 (S.D.N.Y. 1992) ...................................................................... 21

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) .................................................................................. 23

TABLE OF AUTHORITIES (*cont'd.*)

Page(s)

*Novak v. Kaskas,*
  216 F.3d 300 (2d Cir. 2000) ......................................................................... 18, 19, 20

*NYKCool A.B. v. Pac. Int'l Servs., Inc.,*
  2013 WL 6799973 (S.D.N.Y. June 6, 2014) ............................................... 10

*Palandjian v. Pahlavi,*
  586 F. Supp. 671 (D. Mass. 1984) ............................................................... 12

*PDK Labs v. Friedlander,*
  103 F.3d 1105 (2d Cir. 1997) ....................................................................... 14

*Peay v. BellSouth Med. Assistance Plan,*
  205 F.3d 1206 (10th Cir. 2000) .................................................................... 14

*Polargrid LLC v. Videsh Sanchar Nigam, Ltd.,*
  2006 WL 903184 (S.D.N.Y. Apr. 7, 2006) ................................................... 10

*Poling v. Farrah,*
  131 F. Supp. 2d 191 (D.D.C. 2001) .............................................................. 16

*Press v. Chem. Investment Servs. Corp.,*
  166 F.3d 529 (2d Cir. 1999) ......................................................................... 18

*Rizzo v. MacManus Grp., Inc.,*
  58 F. Supp. 297 S.D.N.Y. 2001) ................................................................... 21

*S.E.C. v. First Jersey Sec., Inc.,*
  101 F.3d 1450 (2d Cir. 1996) ....................................................................... 24

*S.E.C. v. Landberg,*
  836 F. Supp. 2d 148 (S.D.N.Y. 2011) .......................................................... 23

*S.E.C. v. Unifund SAL,*
  910 F.2d 1028 (2d Cir. 1990) ....................................................................... 14

*SEC v. Knowles,*
  87 F.3d 413 (10th Cir. 1996) ........................................................................ 14

*SEC v. Nat'l Student Mktg. Corp.,*
  457 F. Supp. 682 (D.D.C. 1978) ................................................................... 21

*Sheehan v. Little Switzerland, Inc.,*
  136 F. Supp. 301 (D. Del. 2001) ................................................................... 21

*Simington  v. Lease Fin. Group, LLC,*
  2012 WL 651130 (S.D.N.Y Feb. 28, 2012) ................................................. 17

*Slep-Tone Entm't Corp. v. Keats Kaoroke,*
  2011 WL 6057979 (S.D.N.Y. Dec. 2, 2011) ................................................ 25

*Sturm v. Mariott Marquis Corp.,*
  85 F. Supp. 2d 1356 (N.D. Ga. 2000) ........................................................... 21

TABLE OF AUTHORITIES (*cont'd.*)

Page(s)

*Sullivan v. 117 Liberty St., LLC.*,
　2013 WL 2304096 (E.D.N.Y. May 24, 2013) ........................................................ 13

*Szulik v. Tagliaferri*,
　966 F. Supp. 2d 339 (S.D.N.Y. 2013) ............................................................. 20, 25

*Szulik v. Tagliaferri*,
　966 F.Supp.2d 339 (S.D.N.Y. 2013) .................................................................. 17

*Tellabs Inc. v Makor Issues & Rights Ltd.*,
　551 U.S. 308, 326, 322-23 (2007) ..................................................................... 18

*Tenney v. Credit Suisse First Boston Corp.*,
　2006 WL 1423785 (2d Cir. May 19, 2006) ........................................................ 17

*Tese-Milner v. De Beers Centenary A.G.*,
　613 F. Supp. 2d 404 (S.D.N.Y. 2009) ................................................................ 16

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
　31 F. App'x 738, 2002 WL 385569 (2d Cir. 2002) ............................................. 16

*Touchtone Grp., LLC v. Rink*,
　913 F. Supp. 2d 1063 (D. Colo. 2012) ............................................................... 14

*Tracfone Wireless, Inc. v. Bequator Corp.*,
　717 F. 2d 1307 (S.D. Fla. 2010) ........................................................................ 10

*Van Dongen v. CNinsure Inc.*,
　951 F. Supp. 2d 457 (S.D.N.Y. 2013) ................................................................ 17

**Statutes**

15 U.S.C. § 78u–4(b)(2) ......................................................................................... 18

**Rules**

C.P.L.R. § 308(2) ................................................................................................... 12

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 25

## PRELIMINARY STATEMENT

Defendants have defrauded plaintiffs Cartica Management, LLC, Cartica Corporate Governance Fund, LP, Cartica Investors, LP, and Cartica Capital Partners Master, LP (collectively, "Cartica")  through a campaign of misstatements and deliberate omissions.  The fraud is headed by Alvaro Saieh, but he could not have fully accomplished his plan to carve from CorpBanca a bailout for himself and his private investments absent the culpable participation of his key lieutenants at CorpBanca.  Saieh's supporting cast at CorpBanca includes Chairman Saieh Guzmán, Director Verdegaal, CEO Massú, and CFO Gigogne (the "Individual Defendants").[1]  Each of these four Individual Defendants bears responsibility for material misstatements and deliberate omissions.  The Individual Defendants' motive for culpable participation is clear:  each stands to profit from their support of Saieh and participation in his scheme, as all are vying to secure key executive and directorial positions at the post-merger bank.  Three of the four are long-standing trusted lieutenants of Saieh, and one of these three is his son.  The Individual Defendants' culpable and active participation in the defrauding of Cartica violated Sections 10(b) and 20(a) of the Exchange Act, and Cartica has pled as much.

The Individual Defendants raise only limited challenges to Cartica's Amended Complaint in their Supplemental Motion to Dismiss.  Defendants concede this Court has personal jurisdiction over Verdegaal, Massú, and Gigogne.  Defendants concede they have no *Janus* challenge as to Saieh Guzmán, Massú, or Gigogne.  Defendants' challenge focuses on service as to all Individual Defendants; personal jurisdiction as to Saieh Guzmán; a *Janus* challenge as to Verdegaal; and scienter and culpability as to all four Individual Defendants.  But Defendants'

---

[1]   Cartica's voluntary dismissal of certain defendants from this action *without prejudice* was so ordered by this Court on July 7, 2014.  Dkt. No. 77.  The dismissed Defendants are Fernando Aguad Dagach, Jorge Selume Zaror, Rafael Guilisati Gana, Francisco León Deláno, Francisco Mobarec Asfuro, Gustavo Arriagada Morales, José Luis Mardones Santander, Maria Catalina Saieh Guzmán, and Ana Beatriz Holuigue Barros.

arguments fail to undermine the well-pled facts Cartica articulates in its Amended Complaint.

**Cartica has properly served each of the Individual Defendants**.  Rule 4 of the Federal Rules of Civil Procedure ("FRCP") permits Cartica to serve these individuals in Chile via mailing by the Clerk of Court, which Cartica has done.  Defendants do not contest that the Individual Defendants received the summons and complaint.  Defendants challenge service by arguing that the Inter-American Convention mandates that service of U.S. pleadings *must* be made only by letters rogatory.  However, the Fifth Circuit and numerous federal district courts, including many decisions from this Court, have resoundingly rejected this very argument.

Cartica also properly served Saieh Guzmán at his residence in New York by leaving a copy of the summons and complaint at his residence and following up with a mailing of the pleadings to both his New York and Chile residences.  Defendants state conclusorily that Saieh Guzmán does not reside at the apartment owned by his father, but nowhere aver any facts supporting that statement.

**This Court has personal jurisdiction over Saieh Guzmán based on general and specific jurisdiction**.  Saieh Guzmán maintains a residence and office in New York and was educated in the United States.  Defendants do not submit an affidavit from Saieh Guzmán contesting these facts.  Defendants do not challenge that this Court has personal jurisdiction over Massú and Gigogne given their approval of CorpBanca's SEC filings.  Saieh Guzmán had the same oversight and authority over transaction-related disclosures, press releases, and related public statements as Massú and Gigogne—and Defendants have made disclosures that establish Saieh Guzmán's approval of those statements.  Given this, Defendants have no grounds for objection as to this Court's personal jurisdiction over him.  Saieh Guzmán also made specific misrepresentations on a teleconference hosted via a U.S. dial-in service, conducted in English,

and directed to U.S.-based investors on the day after the Itaú Transaction was announced.  Thus, Cartica has identified facts sufficient to demonstrate that this Court has *prima facie* personal jurisdiction over Saieh Guzmán.  Should the Court have any concern on the sufficiency of service and jurisdiction, limited jurisdictional discovery would be appropriate.

**Each Individual Defendant made fraudulent statements and did so culpably**.
Defendants concede that Saieh Guzmán, Massú, and Gigogne are all makers of the statements at issue.  Defendants make a *Janus* challenge only as to Verdegaal.  But Cartica has pled that Verdegaal, like Saieh Guzmán, Massú, and Gigogne, is a maker of the statements at issue that were approved by each of them and then filed with the SEC.  Indeed, Defendants' own filings make plain that Verdegaal, in his independent director role, was involved in the review and approval of merger-related filings, disclosures, and press releases.

Defendants also make a conclusory denial of culpability but do not support that conclusion or identify how Cartica has failed to allege sufficient culpability.  Cartica has alleged multiple independent grounds that provide a compelling inference of culpability.  For example, each Individual Defendant has not only opportunity—by virtue of their director and senior executive positions—but also motive to make the statements at issue.  All four are vying for positions in the post-merger bank, positions on which Saieh has either the final say or a substantial vote in determining.  Absent support of Saieh and his scheme, the four Individual Defendants would have little chance of securing future employment at the post-merger bank.

Each Individual Defendant was also an active member of the team negotiating and entering the Itaú Transaction.  Defendants' disclosures aver as much.   More specifically, each Individual Defendant knew that they and Saieh were making materially false and misleading statements when they stated that both any transaction would treat all shareholders equally and

that the Itaú Transaction treats all shareholders equally.  As described in Cartica's Memorandum of Law in Opposition to the Motion of Defendants to Dismiss the Amended Complaint (also to be filed today), this is demonstrably false, and alleged to be false with enough particularity and plausibility to withstand a motion to dismiss.

Defendants filed a Form 6-K with the SEC on July 8, 2014, disclosing that one of CorpBanca's large shareholders, the International Finance Corporation, commissioned an investment bank to "evaluate the terms and conditions of the merger."  Ex. 1 at 5.  The July 6-K also disclosed that, notwithstanding its own averments that the Itaú Transaction treats all shareholders equally, *Defendants* have now commissioned an "independent review" of the transaction by the Centre for Corporate Governance and Capital Markets at the University of Chile.  *Id.*  CorpBanca notes in the July 6-K that "IFC has already indicated that the report of the University of Chile is not sufficient for them."  *Id.*  In a subsequent article about the IFC's actions, an IFC spokesperson is quoted as stating that the IFC's "independent international evaluation" will "assess the financial agreement and the potential benefits that may result from this transaction for CorpGroup, its shareholders and/or its affiliates."   Ex. 2 at 1.

Cartica has pled facts that demonstrate each Individual Defendant has violated Sections 10(b) and 20(a) of the Exchange Act.  Defendants' assertions to the contrary are unavailing.  Accordingly, this Court should deny Defendants' Supplemental Motion to Dismiss.

### SUMMARY OF ALLEGATIONS THAT MUST BE ACCEPTED AS TRUE[2]

This Supplemental Motion concerns the following four individuals, each of whom violated the anti-fraud and control person provisions of the Exchange Act:  Chairman Saieh Guzmán , Director Verdegaal, CEO Massú, and CFO Gigogne.

---

[2]  Cartica incorporates the Summary Of Allegations That Must Be Accepted As True section of their Memorandum of Law in Opposition to the Motion of Defendants Álvaro Saieh Bendeck, Corp Group Banking S.A., and Compañía Inmobiliaria y de Inversiones Saga Limitada SPA to Dismiss the Amended Complaint.

## I.    The Individual Defendants

*Saieh Guzmán*.  Saieh Guzmán is the Chairman of CorpBanca's Board of Directors and the Vice Chairman of CorpGroup.  AC ¶ 48.  He first became a Director on August 25, 1998 and became Chairman on February 2, 2012.  *Id*.  Saieh Guzmán holds a B.A. in Business and Administration from the Universidad Gabriela Mistral as well as a Masters in Economics and an M.B.A. from the University of Chicago.  *Id*.  He is the son of Defendant Saieh and resides at a property owned by his father that overlooks Central Park in Manhattan.  *Id.*  During two meetings between Cartica's Managing Director Ms. Teresa Barger and Saieh Guzmán's father (on August 19, 2013) and December 9, 2013), Saieh Guzmán's father stated his son kept a personal office in the residence.  Barger Aff. at ¶¶ 2-5.

*Verdegaal*.  Verdegaal has been a Director of CorpBanca since March 12, 2013.  AC ¶ 56.  He holds an M.A./B.A. in Economics degree from the Erasmus University (formerly Netherlands School of Economics) as well as an M.B.A. from the University of Michigan.  *Id*. He is a resident of New York and owns property here.  *See* Ds Supp. Br. at 6; AC ¶ 56.

*Massú*.  Massú is the Chief Executive Officer of CorpBanca.  AC ¶ 59.  He became CEO on February 6, 2012 after previously serving as a Director and Second Vice Chairman of CorpBanca's board from October 15, 2009 until January 24, 2012.  *Id*.  He holds a B.A. in Business and Administration from Universidad Adolfo Ibañez and attended a Professional Management Course at Harvard University.  *Id*.  Massú reviewed and signed the material event notices filed with the Chilean Superintendent.  *Id*.  Massú, as CEO, signed CorpBanca's securities filings related to the Itaú Transaction that were filed with Chilean securities regulators and subsequently with the SEC.  AC ¶¶ 140, 141, 143, 151, 175, 225.

*Gigogne*.  Gigogne is the Chief Financial Officer of CorpBanca.  AC ¶ 60.  He became CFO in April 2010 and previously served as head of CorpBanca's market risk department.  *Id*.

He holds a B.A. in Business and Economics from the Universidad de Chile and an M.B.A. from Tulane University.  *Id*.  Gigogne, as CFO, signed CorpBanca's securities filings related to the Itaú Transaction that were filed with Chilean securities regulators and subsequently with the SEC.  AC ¶¶ 141-43, 151, 152, 175, 225.

Each of the Individual Defendants was served the original complaint in New York or Chile, or both.  Dkt. Nos. 11, 20, 22, 30, 32, 41.  Saieh Guzmán was served at his father's (and what appears to be Saieh Guzmán's) residence in New York on April 23, 2014 and Verdegaal was served at his New York residence on April 22, 2014.  Dkt. No. 41.  Both were served by leaving the papers upon a concierge, a person of suitable age and discretion, who denied the process server access to the defendants' apartments, followed by a mailing of a copy of the papers to the same address via first class mailing.  *Id*.  Saieh Guzmán, Massú and Gigogne were all served via FedEx mailed by the Clerk of Court for the United States District Court for the Southern District of New York pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii).  Dkt Nos. 11, 20, 22, 30, 32.

## II.     The Individual Defendants Made And Approved A Series Of Materially False And Misleading Statements

The Individual Defendants each have responsibility for several false and misleading statements and the fraudulent Itaú Transaction itself.  AC ¶¶ ¶ 140-43, 151-53, 167-68, 173-75, 224-25.  Saieh Guzmán made material misstatements to CorpBanca investors during a public call on January 30, 2014, targeted at US investors, stating that the Itaú Transaction benefited all shareholders equally.  AC ¶¶ 153, 167-68.  Saieh Guzmán's disclosures on that call were also false and misleading as they omitted key discussions and deal terms that CorpBanca and Saieh Guzmán had disclosed at an early morning meeting to certain but not all investors.  AC ¶ 167.

Massú and Gigogne directly reviewed and signed several of the false and misleading SEC

6

filings or material event notices incorporated into SEC filings.  AC ¶¶ 140-43, 151-52, 173-75, 225.  Massú reviewed and signed CorpBanca's false and misleading November 29, 2013 Form 6-K and material event notices filed with Form 6-Ks filed on December 12, 2013, January 22, 2014 and January 30, 2014.  AC ¶¶ 140-41, 151.  Gigogne reviewed and signed Form 6-Ks filed on December 12, 2013, December 19, 2013, January 22, 2014, and January 30, 2014.  AC ¶¶ 141-43, 151-52.  These disclosures contain misstatements and/or omissions, including the averments that the Itaú Transaction treated all shareholders equally and that the amount of the Credit Facility was $950 million.  In truth, the Itaú Transaction mistreats minority shareholders in order to enrich Saieh, and the Credit Facility is $1.2 billion.  AC ¶¶ 109-130, 134.

As detailed in Defendants' disclosures, the Directors—including Saieh Guzmán and Verdegaal—reviewed and authorized the deal-related disclosures and announcements, and thus bear liability for the misstatements and omissions in them.  *See* Ex. 3 at 62-65.  Neither Massú, Gigogne, Saieh Guzmán, nor Verdegaal ever filed or caused to be filed disclosures that corrected Saieh's misstatements and instead signed CorpBanca's SVS and SEC filings recklessly or with knowledge that these statements were false or materially misleading.  AC ¶ 175-76.

For false and misleading statements made by Saieh or CorpBanca, all the Individual Defendants, due to their control-person positions in CorpBanca, had an obligation to exercise due care and knew or should have known about the fraudulent and misleading nature of those statements.  AC ¶¶ 176, 224-28.  All were provided with or had access to copies of the Bank's reports, press releases, public filings, and other statements alleged by Cartica to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.  AC ¶ 226.

Directors Saieh Guzmán and Verdegaal had knowledge of the false and misleading

statements and had the power to remove officers and approve or reject the Itaú Transaction. AC ¶ 224.  Verdegaal headed a review of the Itaú Transaction in a sub-committee of the Board of Directors and provided the full CorpBanca Board a "favorable report" regarding the Itaú Transaction, in spite of the palpable unfairness of its terms.  AC ¶ 224.  Saieh Guzmán and Verdegaal reviewed and voted to approve the Itaú Transaction even though it was the product of fraud.  AC ¶ 224.  Massú and Gigogne are senior officers of CorpBanca and signed false and misleading securities filings that were filed with Chilean securities regulators and the SEC and had the power to control or influence and in fact controlled and influenced the acts of CorpBanca giving rise to securities violations alleged in the Amended Complaint.  AC ¶¶ 173-75, 225.

Each of the Individual Defendants had knowledge of the truth and nevertheless made and approved, or were reckless as to the making and/or approval of, misrepresentations and omissions regarding the Itaú Transaction.  As the senior officers and key directors (Chairman and the independent director), each of the Individual Defendants negotiated the deal with Itaú and the key agreements underlying the Itaú Transaction, facts that demonstrate their knowledge that the transaction did *not* treat all shareholders equally.  AC ¶¶ 169, 203-04, 224-25.

In addition, each of the Individual Defendants was also motivated to approve the fraudulent Itaú Transaction because of the potential to be placed on the Board of Directors or in management roles in the new entity.  *See* AC ¶ 17, 110, 152.  Saieh Guzmán is the son of Saieh and was specifically promised a powerful role should the Itaú Transaction be consummated.  AC ¶ 17, 48, 152; Ex. 4.1 at 5.  Further, the June Disclosure has specifically stated that the "Corp Group Parent is expected to appoint three members of the Board of Directors of Itaú CorpBanca," and while "Mr. Jorge Andrés Saieh [Guzmán] is expected to be appointed by Corp Group Parent and will serve as Chairman of the Board," the "other two individuals have not been

determined but may include current directors or executive officers of CorpBanca." *See* Ex. 3 at 72. Saieh has already stated that Massú would fill one of the director slots. AC ¶ 17. In addition, "members of CorpBanca's current management may be appointed to senior management positions at Itaú CorpBanca." *See* Ex. 3 at 72; *see also* Ex. 3 at 69 (stating that Itaú Unibanco and the "Corp Group Parent" will "jointly . . . determine in good faith the individuals who are most qualified to serve as senior management").

Against the background of these facts that are accepted as true at the pleading stage, the Directors' and Officers' Supplemental Motion to Dismiss must be denied. The Court has jurisdiction over Saieh Guzmán, Verdegaal, Massú and Gigogne. Each individual is culpable for violations of §10(b) of the Exchange Act and Rule 10b-5, and as control persons of CorpBanca under Section 20(a) of the Exchange Act.

## ARGUMENT

### I.      Cartica Effectively Served Defendants

#### A.      Cartica Served Saieh Guzmán, Massú, And Gigogne Via FedEx Mailed By The Clerk Of Court For This District

Federal Rule of Civil Procedure ("FRCP") 4(f)(2) permits service on an individual in a foreign country by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt," provided such service is not "prohibited by the foreign country's law." Cartica has effectively served the Individual Defendants via FedEx mailed by the Clerk of Court for the United States District Court for the Southern District of New York pursuant to Rule 4(f)(2)(C)(ii), which expressly provides that service on an individual in a foreign country may be made "using any form of mail that the clerk addresses and . . . that requires a signed receipt." Mailing of the summons and complaint has been successfully delivered to each individual's residence and to CorpBanca's foreign headquarters. Dkt Nos. 13-

9

14, 22-24, 30, 32.

Defendants do not challenge the fact that they received service of the summons and complaint.  Defendants raise only a single challenge regarding the *effectiveness* of such service. Defendants sole argument is that the Inter-American Convention on Letters Rogatory ("I-A Convention") provides the *exclusive* means of service on countries that are signatories to the I-A Convention, such as Chile, and thus Chilean law forbids service of process by other means.  But many courts, including this one, have addressed this exact argument and resoundingly rejected it. *See, e.g.*, *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634 (5th Cir. 1994) ("the Inter-American Convention on Letters Rogatory does not foreclose other methods of service among parties residing in different signatory nations"); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2013 WL 6799973, at *8, *8 n.16 (S.D.N.Y. June 6, 2014) (finding valid service and listing cases).[3] In fact, at least one District Court has explicitly authorized service via FedEx on individuals in Chile.[4]  *See IntelliGender, LLC v. Soriano*, 2012 WL 215066, at *2-3 (E.D. Tex. Jan. 24, 2012) (holding service via FedEx on individual in Chile effective).[5]

---

[3]  It is black letter law that Rule 4(f) does not require that a foreign country must *prescribe* a particular method of service, such as service by mail; instead, the foreign country's law must expressly *prohibit* such service.  *See, e.g.*, *Polargrid LLC v. Videsh Sanchar Nigam, Ltd.*, 2006 WL 903184, at *2 (S.D.N.Y. Apr. 7, 2006) (argument that service by mail must be expressly permitted "has been repeatedly rejected in favor of the view that the method of service specified in that rule is acceptable so long as such service does not actually *violate* the law of the country where service is attempted." (emphasis in the original)).

[4]  Courts consistently hold that, pursuant to Rule 4(f)(2)(C)(ii), service via signed receipt Federal Express mail sent by the Clerk of the Court is appropriate and effective.  *See, e.g.*, *Polargrid*, 2006 WL 903184, at *2-3; *Tracfone Wireless, Inc. v. Bequator Corp.*, 717 F. Supp. 2d 1307, 1310 (S.D. Fla. 2010).

[5]  Defendants attempt to distinguish *IntelliGender* by asserting that the court there did not have an affidavit before it interpreting the I-A Convention.  Ds Supp. Br., at 12 n.7.  That is a distinction without consequence here. Numerous courts have already reviewed, interpreted, and held that the I-A Convention does not mandate the use of letters rogatory as the exclusive means of service within a country.  *See, e.g.*, *Kreimerman*, 22 F.3d at 638 (analyzing "the language, history, and purpose of the Convention," as well as "textual and non-textual" arguments, and concluding that "the Convention does not preempt other methods of service").  Thus, there is no reason for this Court to place any reliance on the declaration of Defendants' Chilean lawyer that self-servingly concludes, while citing no authority, that the Inter-American Convention prohibits service by mail.  *See* Harasic Decl. ¶¶ 12-14.  Indeed, Cartica's own expert, Raul Montero, attests that Chilean law does not prescribe any exclusive method for service of a summons and complaint issuing from foreign countries.  Montero Decl. ¶¶ 4-

The reason for this overwhelming weight of authority is clear, as then Judge, now Justice Sotomayor declared over 20 years ago, "[t]he [Inter-American] Convention merely provides one possible method of service . . . . It is neither mandatory nor exclusive." *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 994 WL 198696, at *5 (S.D.N.Y. May 19, 1994).  *See also Hein v. Cuprum, S.A. de CV*, 136 F. Supp. 2d 63, 70 (N.D.N.Y. 2001) (holding that the "Inter–American Convention on Letters Rogatory [wa]s not the exclusive means to serve process on [a] defendant").[6]

Defendants' sole challenge regarding service has been rejected often and warrants the same treatment here.

**B.      Cartica Also Served Saieh Guzmán At His Residence In New York**

Cartica also effected service on Saieh Guzmán via CPLR § 308(2) and FRCP 4(e). Defendants concede that Cartica properly served Saieh by leaving a copy of the summons and complaint at the property he owns in New York and subsequently mailing copies of those same documents to Saieh.  But Defendants object to the validity of that exact same service as to Saieh Guzmán.  That objection does not withstand scrutiny.

Federal Rule of Civil Procedure 4(e) permits service by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  C.P.L.R. § 308(2) permits delivery of summons "to a person of

---

5.  Instead, Chile leaves determinations regarding procedural law—such as the effectiveness of service—to the legal system of the Court issuing the summons and complaint.  *Id.* ¶ 3.  Mr. Montero concludes that there is simply "no provision under Chilean procedural law that prohibits the form of service . . . by using a private mail or courier service, such as Federal Express."  *Id.* ¶ 6.

[6]   Neither of the cases cited by Defendants address service in connection with the I-A Convention—or involve a country that is a signatory to that Convention.  Ds Supp. Br. at 13 (citing *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at *3-4 (S.D.N.Y. May 11, 2005) (Indonesia); and *Jung v. Neschis*, 2003 WL 1807202, at *3 (S.D.N.Y. Apr. 7, 2003) (Liechtenstein)).  They are thus inapposite.

suitable age and discretion at the . . . dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his or her last known residence."[7] Dkt. No. 41.

Defendants' primary argument that this manner of service is invalid is that Saieh Guzmán resides in Chile.  But Defendants ignore the fact "a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence" under both sets of rules.  *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991) (internal quotation marks omitted) (service on housekeeper at one of a Saudi's twelve apartments in which he spent thirty-four days of the year was proper); *see also 131 Main Street Assocs. v. Manko*, 897 F. Supp. 1507, 1522-24 (S.D.N.Y. 1995) (service on doorman proper where the defendant used a New York apartment as "his place to stay" and visited "with considerable frequency and regularity," even though defendant had "at least one long-standing residence outside of New York City" and spent "most of his time" in his Florida residence).  Service on a doorman of an apartment at which a defendant only resides a small part of the year or during visits is adequate.  *See Karlin v. Avis*, 326 F. Supp. 1325, 1328-30 (E.D.N.Y. 1971) (service valid under C.P.L.R. § 308(2) for individual who used a New York apartment akin to a hotel on trips here but was a non-resident and spent "a considerable amount of time elsewhere"); *see also Palandjian v. Pahlavi*, 586 F. Supp. 671, 676 (D. Mass. 1984) (interpreting New York law and finding service on doorman of apartment where defendant resided a few months of the year proper).

Here, there are sufficient "indicia of permanence" to consider the Manhattan property *one*

---

[7]  Defendants casually note that the papers were delivered to a doorman and not the "actual" residence of Saieh Guzmán or María Saieh, but delivery of papers to a doorman is proper under both Federal Rule of Civil Procedure 4 and N.Y. C.P.L.R. § 308(2), especially where, as here, access to the defendant's apartment is prevented by the doorman.  (Dkt. No. 41).  *See, e.g.*, *Gudavadze v. Kay*, 556 F. Supp. 2d 299, 302 (S.D.N.Y. 2008) (citing a prior order of the Court); *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1524-25 (S.D.N.Y. 1995).

of Saieh Guzmán's  "dwelling houses or usual places of abode"—Saieh Guzmán appears to

reside at the property owned by Saieh on the corner of East 67th Street and 5th Avenue in

Manhattan (AC ¶¶ 48, 57), and Saieh Guzmán has his own personal office in the residence.[8]  AC

¶ 48; Barger Affidavit ¶¶ 2-5.  These facts suffice to plead that Saieh Guzmán maintains indicia

of permanence at the property owned by his father.[9]

## II.    This Court Has Personal Jurisdiction Over Saieh Guzmán

Defendants concede this Court has personal jurisdiction over all but one of the remaining

Individual Defendants, Saieh Guzmán.  *See* Ds Supp. Br. at 9-10, A-1.  But Saieh Guzmán

directly oversaw and controlled the creation and dissemination of filings containing the false and

misleading statements to US investors and made direct oral misrepresentations regarding the Itaú

Transaction via a teleconference with US investors.  Defendants' jurisdictional challenge as to

Saieh Guzmán therefore fails, as Cartica has alleged sufficient allegations to establish a *prima

facie* basis for personal jurisdiction.

The "Securities Exchange Act permits the exercise of personal jurisdiction to the limit of

the Due Process Clause of the Fifth Amendment."  *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033

---

[8]    The fact that the property is owned by another does not make service ineffective—"[w]hile ownership and
lesser property interests, or the lack thereof, may testify to the strength of the connection that an individual has
to a property, they should not be considered conclusive on the issue of notice either way," as "adults who
occupy a residence at the largesse of friends or relatives . . . can claim presence[.]"  *131 Main St. Assocs.*, 897 F.
Supp. at 1524 n.15.

[9]    Defendants also argue that Cartica cannot show that it mailed a copy of the summons and complaint to the "last
known residence" of Saieh Guzmán as required by C.P.L.R. § 308(2).  Service was properly effected under
C.P.L.R. § 308(2) when plaintiff mailed the documents to the same address that was his dwelling house or usual
place of abode.  *See Howard Johnson Int'l v. Wang*, 7 F. Supp. 2d 336, 340-341 (S.D.N.Y. 1998) (finding
service proper where mailing went to same dwelling place or usual place of abode where plaintiff left summons
and complaint, which also constituted defendant's last known residence despite defendant's assertion that a
separate address was his actual residence) (citing *Karlin*, 326 F.Supp. at 1329) ("In a highly mobile society it is
unrealistic to interpret CPLR § 308(2) as mandating service at only one location where, in fact, a defendant
maintains several dwelling places.").  Separately, service was properly effected under Federal Rule of Civil
Procedure 4(e), by delivery of the papers to the doorman, mailing of these documents to the defendants'
"dwelling houses or usual places of abode" and by filing proof of service with the clerk of court.  *See, e.g.,
Sullivan v. 117 Liberty St., LLC.*, 2013 WL 2304096, at *1 (E.D.N.Y. May 24, 2013).  This completes Cartica's
obligations under both the FRCP and C.P.L.R.

(2d Cir. 1990).  The Act allows for nationwide service of process, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 398 (S.D.N.Y. 2005), and under that statute the "personal jurisdiction analysis is less exacting." *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1071 (D. Colo. 2012) (citing *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1212–13 (10th Cir. 2000) (analyzing claims under ERISA); and *SEC v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996)).  When assessing service as to claims brought under such a statute, the relevant question is whether the defendant has sufficient "minimum contacts" with the United States as a whole. *Alstom*, 406 F. Supp. 2d at 398.[10]

At the motion to dismiss stage, Cartica "need only allege facts constituting a *prima facie* showing of personal jurisdiction."  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  Additionally, "[w]here the plaintiff has made a prima facie showing of minimum contacts . . . the exercise of personal jurisdiction is favored unless the defendant makes a showing that such an exercise of jurisdiction is unreasonable."  *Alstom*, 406 F. Supp. 2d at 398.

Cartica has pled facts that establish a prima facie case of specific jurisdiction over Saieh Guzmán.  As the Chairman of CorpBanca's Board of Directors, he had direct knowledge, control and involvement in the filing and dissemination of false and misleading statements and approved the fraud-based Itaú Transaction; statements and actions Saieh Guzmán knew or should have known would be relied upon by or affect American investors.  AC ¶¶ 48, 201, 203, 224.  *See, e.g.*, *Itoba Ltd. v. LEP Grp. PLC*, 930 F. Supp. 36, 40-41 (D. Conn. 1996) (holding that personal jurisdiction existed over foreign director defendant who "knew or should have known" that a

---

[10]   There are two types of jurisdiction:  general jurisdiction and specific jurisdiction.  General jurisdiction is based on a defendant's general contacts with a forum, which must be "continuous and systematic."  *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 441-42 (S.D.N.Y. 2006).  Specific jurisdiction exists when the suit arises out of or is related to the defendant's contacts with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and "[t]he defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Id.* (citation omitted).

document "he approved would be filed with the SEC and be relied on by potential investors");
*Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 101-02 (S.D.N.Y. 1989)
(finding personal jurisdiction over foreign board member who was a "behind the scenes player"
and allegedly orchestrated a fraudulent corporate acquisition that resulted in the filing of
misleading financial statements with the SEC).[11]

Additionally, on January 30, 2014, Saieh Guzmán made materially false and misleading
statements concerning CorpBanca's deal with Itaú via a telephone conference accessible to and
directed to US investors and US market participants including Cartica.  AC ¶¶ 153, 156, 167-68.
Making false and misleading statements directed at US investors, even if the statements were not
made in the US, is sufficient on its own to establish specific jurisdiction over foreign individual
defendants.[12]  *See Absolute Activist Master Value Fund, Ltd. v. Ficeto*, 2013 WL 1286170, at *13
(S.D.N.Y. May 28, 2013) (jurisdiction over a foreign national was reasonable because he
"purposefully directed activity at the United States that furthered the fraudulent scheme").[13]

---

[11]  *See also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 351-352 (D. Md. 2004) ("United States courts frequently have asserted personal jurisdiction over individual defendants who sign or, as control persons, approve the filing or disseminating of, particular forms required by the SEC which they knew or should have known would be relied on by U.S. investors") (cited in Ds  Op. Br. at 11). *Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1014 (D.N.J. 1996) (exercise of personal jurisdiction proper over foreign corporate officers and directors because their "involvement in approving and disseminating financial statements with knowledge that they would affect the price of [a company's] stock on the NASDAQ market . . . satisfies the requirement that the defendants purposefully avail themselves of the forum").

[12]  Saieh Guzmán also has sufficient contacts with the United States to warrant the exercise of general personal jurisdiction.  He studied and received an M.B.A. from the University of Chicago, and appears to maintain a residence at the property owned by his father on the corner of East 67th Street and 5th Avenue in Manhattan. AC ¶ 48.  In the course of two meetings, Cartica's Managing Director Teresa Barger was informed by Saieh that Saieh Guzmán was at the dwelling and occupying his own personal office in the residence.  Barger Affidavit ¶¶ 2-5.  *See Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (N.Y. 1982); *ABKO Indus., Inc. v .Lennon*, 52 A.D.2d 435, 440 (1st Dep't 1976); *see also Dai Nippon Printing Co., Ltd. v. Melrose Pub. Co., Inc.*, 113 F.R.D. 540 (S.D.N.Y. 1986) (company president's "maintenance of a residence/office in New York and his proclivity to travel ling demonstrate that there is no unfairness or unreasonableness in allowing the action to be brought in New York" (internal quotation marks omitted)).

[13]  *See also, e.g., Alstom*, 406 F. Supp. 2d at 399-400 (holding the signing of document filed with the SEC and forming the basis of plaintiffs' claim sufficient contact to justify the Court's exercise of jurisdiction over one defendant, while finding jurisdiction over a different nonsignatory defendant due to membership in group that was "otherwise responsible for the contents and dissemination of the Registration Statements."); *In re CINAR*

Lastly, Defendants cannot, and do not attempt to, argue that exercise of personal jurisdiction over Saieh Guzmán would be unreasonable.  Besides maintaining a residence and office in New York, the US has a great interest in adjudicating federal securities law claims based on conduct purposefully directed at the US.[14]  Defendants explicitly solicited investors within the US, (AC ¶ 205), and it is reasonable for Saieh Guzmán to be haled into court in the US for knowingly controlling the creation and dissemination of false and misleading statements in SEC filings and for making false and misleading oral statements to US investors.[15]

## III.   Cartica Has Pled Both Primary And Control Person Liability For Securities Fraud Committed By Saieh Guzmán, Massú, Gigogne, and Verdegaal

Cartica has stated claims for relief that are plausible on their face—namely, that Defendants defrauded Cartica (and other minority investors) in connection with Cartica's holding of CorpBanca securities and compounded the impact of their fraud by failing to make disclosures required by the securities laws.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

*Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305 (E.D.N.Y. 2002) (same); *Poling v. Farrah*, 131 F. Supp. 2d 191, 192-93 (D.D.C. 2001) (holding that the Court had personal jurisdiction over defendant pursuant to Section 27 of the Securities Exchange Act where the defendant "made several telephone calls to [plaintiff] while [plaintiff] was at his residence in the District of Columbia," and "[u]nder Section 27, courts consistently have held that telephone calls made into a district and other similar contacts are sufficient acts or transactions to establish venue and hence personal jurisdiction.").

[14]  *See, e.g., Ficeto,* 2013 WL 1286170, at *13 ("[t]he U.S. has a great interest in seeing that its securities laws are followed"); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 457 (S.D.N.Y. 2005) (personal jurisdiction over foreign individual who "lives and works in Italy" reasonable because of "the interest of the United States in securing relief . . . for U.S. citizens injured here in consequence of any violations of the federal securities laws by officials of a foreign company that accessed our capital markets") (cited in Ds. Supp. Br. at 11).

[15]  Cartica has made the required *prima facie* showing of jurisdiction over Saieh-Guzmán.  However, if the Court concludes that Cartica's allegations are insufficient, jurisdictional discovery into Saieh-Guzmán's role in the creation and dissemination of the misleading SEC filings and other contacts with the United States is warranted and Cartica hereby respectfully requests such jurisdictional discovery.  *See, e.g., Tese-Milner v. De Beers Centenary A.G.*, 613 F. 2d 404, 417-18 (S.D.N.Y. 2009) ("Without jurisdictional discovery, the Second Circuit has stated that it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York." (internal quotation marks omitted); *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739, 2002 WL 385569, at *1 (2d Cir. 2002) (vacating and remanding case for jurisdictional discovery where plaintiffs' jurisdictional allegations "are simply insufficiently developed at this time to permit judgment as to whether person jurisdiction is appropriate").

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.[16]  A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.  *See Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 466 (S.D.N.Y. 2013).[17]

### A.    Cartica Has Pled A Section 10(b) Claim Against Saieh Guzmán, Verdegaal, Massú, And Gigogne

#### 1.    Cartica Pleads Facts Demonstrating Scienter

To allege scienter, a plaintiff must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).  This can be accomplished in two ways: either by alleging facts to show that the defendants had

---

[16]  "A court's task in ruling on a 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Stearns & Co., Inc.*, 340 F.3d 94, 101 (2d Cir. 2003) (internal citations and quotations omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, 2006 WL 1423785 (2d Cir. May 19, 2006); *overruled on other grounds as recognized by City of Pontiac Gen. Empl's. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173-74 (discussing inquiry notice standard).

[17]  Defendants' demand that Cartica allege with specificity the actions each Defendant took.  But such specificity is not required at this stage.  This is particularly so in a case where Defendants' disclosures are incomplete and discovery has not commenced, leaving the key details of CorpBanca's internal decision making process entirely within the Defendants' possession.  *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir. 1993) (reversing dismissal below for lack of specificity and noting that "the Fund was wholly dependent on the defendants' representations to make out its case of fraud.  As the Fund was not privy to the negotiation of the [transaction], a more particularized account of the fraud claims could only be established through discovery."); *Simington v. Lease Fin. Group, LLC*, 2012 WL 651130, at *10 (S.D.N.Y Feb. 28, 2012) ("The fact that plaintiffs have been unable to identify specific acts and representations by each specific defendant is of no moment. The very nature of the scheme, as alleged, gives rise to the reasonable inference that all defendants (including defendant officers who held 'key positions') were involved in the fraud.  To strictly construe Rule 9(b)'s pleading requirements especially where, as here, concrete facts are peculiarly within the knowledge of the party charged with the fraud, would work a potentially unnecessary injustice.") (citations and quotations omitted); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 355 (S.D.N.Y. 2013) (Castel, J.).

both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious behavior or recklessness.  *Novak v. Kaskas*, 216 F.3d 300, 307 (2d Cir. 2000).  The inquiry is "holistic[]," assessing whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs Inc. v Makor Issues & Rights Ltd.*, 551 U.S. 308, 326, 322-23 (2007).  Although speculation and conclusory allegations will not suffice, "neither do [courts in the Second Circuit] require great specificity provided the plaintiff alleges enough facts to support a strong inference of fraudulent intent."  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 169 (2d Cir. 2000) (internal quotation marks omitted).

Under both Rule 9(b) and the PSLRA,[18] a court may find that a plaintiff has met the scienter requirement on a motion to dismiss where the complaint sufficiently alleges that defendants:  (1) "benefitted in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor."  *Novak,* 216 F.3d at 311.

### (i)   Cartica Has Pled that the Individual Defendants Had Motive

The Individual Defendants do not contest the existence of opportunity in their Memorandum of Law, nor could they given their control positions over CorpBanca.  (*See* AC ¶¶ 48, 59.)  Therefore, "[t]he Court need only focus on the question of motive, as the opportunity to commit fraud can be assumed."  *Van Dongen*, 951 F. Supp. 2d at 474 n.6 (citing *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 638 (S.D.N.Y. 2012)).

---

[18]   Excepting the "with particularity" requirement contained in paragraph (b)(2), "the enactment of [the PLSRA] did not change the basic pleading standard for scienter in this circuit." *See Novak,* 216 F.3d at 310; *see also Press v. Chem. Investment Servs. Corp.,* 166 F.3d 529, 538 (2d Cir. 1999).

The Amended Complaint sufficiently alleges the Individual Defendants' motive to commit fraud.  Each Individual Defendant stands to "benefit[] in a concrete and personal way from the purported fraud," *Novak*, 216 F.3d at 311, via a position in the post-merger bank, a lucrative foot in the door at the massive Itaú financial empire.[19]  Cartica has pled that Saieh Guzmán and Massú have this benefit in writing under the Transaction Agreement and Shareholders Agreement: Saieh Guzmán will be Chairman of the new bank and Massú will be appointed as a director.  AC ¶¶ 17, 18, 110, 152.  For Gigogne and Verdegaal, the gatekeeper to that opportunity is Alvaro Saieh, who under the terms of the Shareholder Agreement will be entitled to significant authority over executive appointments once CorpBanca is absorbed into the larger Itaú corporate structure.  The Individual Directors thus have an overwhelming incentive to please their patron – or risk getting left in the cold.[20]

Special motive considerations apply to Saieh Guzmán, the son (and presumably heir) of the fraud's chief beneficiary.  Cartica has pled that the fate of the Saieh family empire is at stake after catastrophic losses from the SMU venture.  AC ¶¶ 1, 7, 68-73, 178.  This motivated the sale of CorpBanca.  AC ¶¶ 1, 178.  To save face and ensure a Saieh-family presence in the new, post-merger bank, Alvaro Saieh negotiated a deal that permits Saieh Guzmán to occupy the role of Chairman in the post-merger bank, in addition to the windfall of special benefits to the Saieh

---

[19]  As of December 31, 2013, Itaú Unibanco held over US$430 billion in assets, *see* Ex. 6 at A-23 (reporting assets of 1.027 trillion Brazilian *reals*), while CorpBanca's assets amounted to US$33.2 billion.  Ex. 8 at F-2.

[20]  Moreover, as CorpBanca's SEC filings reveal, Alvaro Saieh has the power to elect a majority of the Bank's directors and control management.  AC ¶ 45; Ex. 5 at 30.  And under the terms of the Shareholder Agreement, Saieh agreed to remove any director opposing the Itaú Transaction.  Ex.7.1 at § 2.2.  Thus, the Individual Defendants had strong motive to approve an inferior transaction that would bring Saieh – and hopefully themselves – into Itaú, rather than a straightforward sale that would benefit all CorpBanca shareholders equally.  The "magnitude" of the incentives here places the Individual Defendants' motive well beyond the generalized desire to increase executive compensation at issue in the cases cited by Defendants.  *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) (distinguishing between the generalized desire to increase bonuses held insufficient in *Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) a case cited by Defendants, and *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645 (8th Cir. 2001), in which "the magnitude of the compensation" and the threat of an expiring contract showed "a direct link between the compensation packaged and the fraudulent statements").

family empire.  AC ¶¶ 17, 124.  This suffices to plead scienter as to Saieh Guzmán.[21]

> **(ii)** **Cartica Has Shown that the Individual Defendants Acted Recklessly or with Intent to Defraud.**

Independent of motive and opportunity, a plaintiff can plead scienter by alleging intentional misconduct, which involves deliberate illegal behavior, or recklessness, which involves a departure from the standards of ordinary care that either puts the defendant on notice of the misrepresentation or was so obvious that the defendant must have been aware of it. *Novak*, 216 F.3d at 308.  "[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements.  Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."  *Id.*

Cartica has pled exactly this, alleging the Individual Defendants knew the representations they made or authorized to be made were false and made them with the intent to defraud.  AC ¶¶ 141-46, 151-169, 174-77, 203-04, 224-227.  Specifically, each had access to internal reports and other data and information about the true nature of the merger solicitation, negotiation, and ultimate consummation, and/or participated in the merger solicitation, negotiation, and consummation.  AC ¶¶ 203-04.  They could not have reviewed these documents without being aware of the special benefits accruing to Saieh, and of the falsity of CorpBanca's representations that all shareholders would be treated equally.  At the very least, Cartica has pled that these

---

[21]   *See, e.g., Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 364 (S.D.N.Y. 2013) (Castel, J.) (finding scienter where "nondisclosure benefitted defendants because it permitted the continuation of undisclosed payments"); *In re Vivendi Universal, S.A.*, 2004 WL 876050, at *8 (S.D.N.Y. Apr. 22, 2004) (finding scienter adequately pled with regard to CEO and chairman of company based on "larger empire-oriented motives alleged in the complaint" and where "the ability [of the company] to maintain and expand its enterprise" was at stake); *Freedman v. Value Health, Inc.*, 958 F. Supp. 745 (D. Conn. 1997) (finding motive where defendant faced a multimillion dollar payout from a completed merger coupled with allegations that current state of affairs was that the company was a "sinking ship.").  Defendants themselves have affirmed that a sale of CorpBanca was necessary to access a platform from which to expand its enterprise throughout South America.  *See* Ex.8 at 44.

defendants (i) were reckless in not knowing or (ii) failed to check information they had a duty to monitor regarding the Itaú Transaction and that the deal did not treat shareholders equally and provided a windfall of control-share-premium benefits to Saieh—the ultimate benefactor of each of these defendants.  AC ¶¶ 169, 171-78, 180-87, 203-04, 224-27.

Courts, including this one, often find recklessness or scienter when corporate insiders misrepresent key facts about a merger in order to curry shareholder votes.  *See e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 808 F. Supp. 1037, 1052 (S.D.N.Y. 1992) (finding scienter where company failed to disclose special payouts to management prior to merger vote); *Freedman*, 958 F. Supp. at 751, 758 (finding recklessness in statement that merger "is fair to, and in the best interest of, [the company] and its stockholders."); *Rizzo v. MacManus Grp., Inc.,*158 F. Supp. 2d 297, 306 (S.D.N.Y. 2001) (finding scienter when insiders gave impression a merger would *not* happen, despite knowledge that discussions were in advanced state).[22]

### 2.  Cartica Has Alleged A Section 10(b) Claim Against Verdegaal As One Of The Makers Of Materially Misleading Statements

Cartica has alleged a 10(b) claim against Verdegaal.  Verdegaal is the only remaining defendant for whom Defendants raise a *Janus* challenge.  *See* Ds Supp. Br. at 17-18, A-1.

In *Janus Capital Group, Inc. v. First Derivative Traders*, the Supreme Court held that Section 10(b) limits liability to a "maker" of an allegedly fraudulent statement.  131 S. Ct. 2296,

---

[22] *See also In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 428 (D.N.J. 2002) (finding scienter where executives misrepresented success of already-completed merger, noting that "[w]hat is critical is the fact that each held a position in Honeywell that required that he have full knowledge of its business and financial status"); *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193 (D. Kan. 2002) (finding recklessness where company was aware of government hostility to proposed merger yet "issued an optimistic statement regarding regulatory approval so that Sprint shareholders would vote in favor of the merger"); *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 301, 315-16 (D. Del. 2001) (finding scienter in case of former directors who made representations to shareholders about merger agreement without disclosing uncertainty of obtaining financing); *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1371 (N.D. Ga. 2000) (finding scienter where defendants failed to disclose the availability of alternatives to an exploitative merger); *In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1176 (W.D. Wash. 1998) (finding scienter where Boeing's disclosures prior to a proposed merger "were inconsistent with the company's own information about the extent and nature of its production difficulties"); *SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 711-12 (D.D.C. 1978) (finding recklessness where defendants did not reveal the existence prior to merger of need for adjustments to financial statements).

2302 (2011).  The Court therefore found that an investment advisor who had been involved in

preparing prospectuses for a client did not "make" the statement contained therein for purposes

of Rule 10b–5(b)—only the client could be held liable.  *Id.* at 2305.  *Janus* "*addressed only*

whether third parties can be held liable for statements made by their clients.  Its logic rested on

the distinction between secondary liability and primary liability . . . and has no bearing on how

corporate officers who work together in the same entity can be held jointly responsible on a

theory of primary liability." *City of Pontiac v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374

(S.D.N.Y. 2012) (emphasis in the original).  This holding does not mandate that the maker of a

statement be the person who signs or utters it.  Instead, "the maker of a statement is the person or

entity with ultimate authority over the statement, including its content and whether and how to

communicate it." *Janus*, 131 S. Ct. at 2302.

CorpBanca's own disclosure shows that Verdegaal and his fellow board members had

such ultimate authority at CorpBanca.  For example, at an October 29, 2013 meeting, Verdegaal

and the Board authorized management to file certain documents with Chilean regulatory

authorities relating to the potential Itaú Transaction.  *See* Ex. 3 at 63.  These disclosures to

Chilean regulators—subsequently re-made in the United States via filing Form 6-Ks with the

SEC—form the bulk of the material misrepresentations that Cartica alleges misled investors

about the terms of the merger.  AC ¶¶ 140-46.[23]

---

[23]  These 6-Ks here were signed by Defendants Massú and Gigogne.  But even though Defendants appear to argue that the *Janus* case limits 10b-5 liability to only the person whose name appears on a fraudulent filing (Ds. Supp. Br. at 18 (citing *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012))), that fact does not end the inquiry as to Verdegaal.  *Janus* prohibits two different *entities* from both being makers of a single statement, but "[i]t is not inconsistent with *Janus Capital* to presume that multiple people in a single corporation have the joint authority to 'make' an SEC filing, such that a misstatement has more than one 'maker.'" *City of Pontiac*, 875 F. Supp. 2d at 373; *see also In re Pfizer*, 936 F. Supp. 2d at 269 (denying summary judgment motion where plaintiff presented evidence that top management reviewed all Pfizer press releases related to a specific drug).  Limiting liability to only officers who sign fraudulent filings would also run counter to the holdings in multiple post-*Janus* cases in which this Court has found officers or directors to have ultimate authority over a statement made by their company.  *See, e.g., In re Stillwater Capital Partners Inc.*

Like the individual defendants in *In re Pfizer Inc. Secs. Litig.*, 936 F. Supp. 2d 252 (S.D.N.Y. 2013), Verdegaal had "ultimate authority" to approve and authorize the disclosures that misled investors and can therefore be held liable even without personally signing them. *Id.* at 269. CorpBanca's disclosures show Board approval of merger-related documents, such as filings and press releases—just as the individual defendants in *Pfizer* were alleged to have reviewed all press releases on a certain topic. *Id.*; *see City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc*, 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) ("*Janus* recognized that attribution [can] be 'implicit from surrounding circumstances'") (quoting *Janus*, 131 S. Ct. at 2302). Further, the disclosure documents suffice to demonstrate an "indicia of control" to establish the Board's ultimate authority over the disclosures, particularly at the motion to dismiss stage where all reasonable inferences must be drawn in plaintiff's favor.[24] *City of Roseville Emps. Ret. Sys.*, 814 F. Supp. 2d 418.[25]

---

*Litig.*, 853 F. Supp .2d 441, 460 (S.D.N.Y. 2012); *City of Pontiac Gen. Empl's. Ret. Sys.*, 875 F. Supp. 2d 374. Indeed, Janus itself would not support the conclusions Defendants proffer. *See Janus*, 131 S. Ct. at 2306 (Breyer, J., dissenting) ("The majority points out that the Janus Fund's board of trustees has 'ultimate authority' over the content of the statements in a Fund prospectus."). The critical inquiry is whether "the maker of a statement is the person or entity with ultimate authority over the statement." *Janus*, 131 S. Ct. at 2302. And, as noted in the paragraph above, Verdegaal had such authority. *Smith Barney*, in which the defendant in question was only a Senior Vice President, Director, and Principal Accounting Officer, and therefore did not have ultimate authority over statements he did not sign, is inapposite. *See Smith Barney*, 884 F. Supp. 2d at 156, 165.

[24] These allegations distinguish this case from *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011), in which the Commission conceded the defendants had not "made" any misrepresentations and only asserted "scheme liability," and *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993), in which the defendants did not allege that the directors personally knew of or participated in the fraud. *See* Ds Supp. Br. at 17.

[25] Defendants cite *In re UBS AG Secs. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) for the proposition "group" pleading cannot survive *Janus*. Ds Supp. Br. at 17. But Cartica has more than adequately pled culpable participation by Verdegaal individually (AC ¶ 224), and in any event, *UBS* is on the wrong side of a split among decisions in this Court, in which the bulk of decisions (including one by Your Honor) have found group pleading survived *Janus*. *See S.E.C. v. Landberg*, 836 F. Supp. 2d 148, 156 (S.D.N.Y. 2011) (Castel, J.) (applying the group pleading doctrine post-*Janus* and requiring only an allegation that "the defendant was sufficiently responsible for the statement – in effect, caused the statement to be made – and knew or had reason to know that the statement would be disseminated to investors."); *City of Pontiac*, 875 F. Supp. 2d at 374 (listing more than a dozen post-PSLRA – and several post-*Janus* – cases applying the group pleading doctrine). Although the Second Circuit recently affirmed *UBS*, it explicitly did not address the group pleading issue. *See City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 n.53 (2d Cir. 2014). Ho v.

B.        **Cartica Has Properly Pled A Claim For Control Person Liability**

Cartica has alleged facts that are sufficient to demonstrate control person liability on the

part of the Individual Defendants.  In the Second Circuit the claim has three elements: 1) a

primary violation by the controlled person, 2) control of the primary violator by the defendant,

and 3) that the defendant was, in some meaningful sense, a culpable participant in the controlled

person's fraud.  *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996).[26]

The existence of a primary violation by CorpBanca is adequately pled throughout

Cartica's complaint, as detailed in Section I of its Opposition to the Defendants' Motion to

Dismiss.  Cartica therefore need only include "a short and plain statement" detailing the control

and culpability of Saieh Guzmán, Massú, Gigogne, and Verdegaal.  Fed. R. Civ. P. 8(a)(2).

Cartica has alleged facts that are more than sufficient to demonstrate control.  Cartica

alleges that Defendants "Massú and Gigogne, as CEO and CFO, respectively, were intimately

involved" in the Itaú Transaction (AC ¶ 174), and that they "had the power to control or

influence and did in fact control and influence the particular acts of CorpBanca giving rise to the

securities violations alleged."  AC ¶ 225.  Massú and Gigogne also are also alleged to have

reviewed and signed several of the key public statements containing material misrepresentations,

demonstrating their control over CorpBanca's public statements.  AC ¶ 59, 140-43.  Saieh

Guzmán, Verdegaal and the other directors, meanwhile, are alleged to have had "the power to

control those statements" made by CorpBanca in violation of the securities laws, as well as "the

---

*Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) similarly does not address the issue, finding only that the group-pleading doctrine does not apply to oral statements.

[26]    Like the other Defendants, the Individual Defendants attempt to argue that dicta from *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998), a Second Circuit case concerning the collateral estoppel effect of an arbitral decision on a Rule 10b-5 claim, somehow laid out a new and heightened pleading standard for claims under Section 20(a).  But as discussed in Section III of Cartica's opposition to Defendants' motion to dismiss, Boguslavsky is simply "not [a] pleading case[]," *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 523 (W.D. Pa. 2002), and its dicta does nothing to disturb the inclination of courts in this District to hold Section 20(a) claims only to Rule 8(a)'s generous pleading standard.  *See In re Am. Int'l Group, Inc. 2008 Secs. Litig.*, 741 F. Supp. 2d 511, 535-36 (S.D.N.Y. 2010); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003).

power to control the officers issuing statements on behalf of the Bank and negotiating the terms

of the Itaú transaction," and "the authority to approve or reject the Itaú Transaction, one they

knew to be the product of fraud."  AC ¶ 224.  In fact, Defendants themselves concede these facts,

disclosing in SEC filings that Massú and the Board members are empowered to "manage[]" the

company, as well as to hire and fire all other officers.  AC ¶ 225; Ex. 8 at 147.

Similarly, Cartica has pled culpability, a lesser showing than scienter, *In re Initial Pub.*

*Offering Secs. Litig.*, 241 F. Supp. 2d 281, 395-96 (S.D.N.Y. 2003), and one which is fully

satisfied when scienter is adequately pled.  *Szulik*, 966 F. Supp.2d at 369 (Castel,

J.).  Specifically, Cartica alleges Massú and Gigogne were aware that CorpBanca was being

shopped around and that it was seeking a transaction that would disproportionately benefit Saieh

(AC ¶ 174), and they were aware that Saieh and CorpBanca were making materially false

statements yet did nothing to correct them.  AC ¶ 175.  Cartica also alleges CorpBanca's

directors had access to documents and information showing the Bank's statements were false,

and therefore "either knew or should have known about the fraudulent and misleading nature of

the statements."  AC ¶ 176.  Cartica also alleges circumstantial evidence supporting an inference

of scienter (AC ¶¶ 177-87), an inference which applies equally to directors and officers who

negotiated, approved, and carried out the fraudulent transaction.  These allegations show

culpability under Rule 8(a), particularly at this stage where "the Court must draw all reasonable

inferences in the plaintiff's favor and accept as true all well-pleaded factual allegations in the

complaint."  *Slep-Tone Entm't Corp. v. Keats Kaoroke*, 2011 WL 6057979, at *1 (S.D.N.Y. Dec.

2, 2011) (Castel, J.).

## CONCLUSION

For all the reasons explained here, Cartica respectfully requests that this Court deny the

Directors' and Officers' Supplemental Motion to Dismiss in its entirety.

Dated:   New York, New York
             July 15, 2014

GIBSON, DUNN & CRUTCHER LLP


By: _____
     s/ Adam H. Offenhartz

Adam H. Offenhartz
David J. Kerstein
James M. Thompson

200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
*Attorneys for Cartica*