## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
CARTICA MANAGEMENT, LLC, CARTICA :
CORPORATE GOVERNANCE FUND, LP, :
CARTICA INVESTORS, LP, and CARTICA : No. 14-CV-2258 (PKC)
CAPITAL PARTNERS MASTER, LP, :
:
               Plaintiffs, : Hon. P. Kevin Castel
:
     v. :
:
CORPBANCA S.A., ITAÚ UNIBANCO :
HOLDING S.A., BANCO ITAÚ CHILE, :
ÁLVARO SAIEH BENDECK, CORP GROUP :
BANKING S.A., COMPANÍA INMOBILIARIA :
Y DE INVERSIONES SAGA LIMITADA, :
JORGE ANDRÉS SAIEH GUZMÁN, :
FERNANDO AGUAD DAGACH, JORGE :
SELUME ZAROR, RAFAEL GUILISATI :
GANA, FRANCISCO LEÓN DÉLANO, :
FRANCISCO MOBAREC ASFURA, :
GUSTAVO ARRIAGADA MORALES, JOSÉ :
LUIS MARDONES SANTANDER, HUGO :
VERDEGAAL, MARÍA CATALINA SAIEH :
GUZMÁN, ANA BEATRIZ HOLUIGUE :
BARROS, FERNANDO MASSÚ TARE, and :
EUGENIO GIGOGNE MIQUELES, :
:
               Defendants. :
:
-----------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW OF DEFENDANTS CORPBANCA,
## ÁLVARO SAIEH BENDECK, CORP GROUP BANKING S.A., AND
## COMPAÑÍA INMOBILIARIA Y DE INVERSIONES SAGA LIMITADA SPA
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................1

Argument .............................................................................................................................3

I.    The Section 10(b) Claim Should Be Dismissed ....................................... 3

    A.    Cartica Acknowledges That 10(b) Does Not Regulate Fiduciary Decisions........................................................................................... 3

    B.    The Securities Laws Require Accurate Disclosure Of Material Facts, Not Characterizations Of Those Facts ..................................... 4

    C.    Cartica Has Failed To Allege Any Actionable Misrepresentations Or Omissions.......................................................................................... 7

        1.    Cartica Has Failed To Allege Material Omissions ............................ 7

        2.    Cartica Has Failed To Allege Material Misrepresentations.............................. 9

    D.    Cartica Cannot Obtain A Permanent Injunction Of The Merger Under Section 10(b) Due To Alleged "Pre-Deal Misrepresentations"............ 12

    E.    The Case Law In This Circuit Holding That The Purchase Or Sale Requirement Does Not Apply To Claims For Injunctive Relief Is Wrongly Decided ............................................................................ 13

II.    Cartica's Twice-Mooted 13(d) Claim Is Meritless .................................. 14

III.    The 20(a) Claim Fails Because Cartica Does Not Allege That Any "Controlling Persons" Participated In Preparing Or Disseminating CorpBanca's Disclosures ....................................................................... 16

IV.    Cartica's Common Law Fraud Claim Should Be Dismissed ................... 18

    A.    Because Cartica's Securities Claims Fail, The Common Law Fraud Claim Should Be Dismissed On Jurisdictional Grounds ..................... 18

        1.    The Court Lacks Jurisdiction Over The Common Law Fraud Claim............... 18

        2.    Dismissal is Warranted on *Forum Non Conveniens* Grounds ......................... 18

    B.    Cartica Has Failed To State A Claim Under Chilean Or New York Law ................................................................................................ 19

i

1.      Chilean Law Applies And Requires Dismissal...................................................... 19

2.      Cartica Fails To Plead A Fraud Claim Under New York Law ......................... 20

Conclusion ...................................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................ 19

*AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000) ............................... 5

*Avnet, Inc. v. Scope Industries,* 499 F. Supp. 1121 (S.D.N.Y. 1980) ........................... 15

*Ballan v. Wilfred Am. Educ. Corp.*, 720 F. Supp. 241 (E.D.N.Y. 1989) .................................. 4, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 7

*Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347 (D. Del. 1977) ........................... 12

*Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) ........................... 12

*Crane Co. v. Am. Standard, Inc.,* 603 F.2d 244 (2d Cir. 1979) .................................................. 12

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ............................... 19

*Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1 (2d Cir. 1983) .......................... 4, 5, 9

*Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465 (1997)........................................ 14

*Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217 (S.D.N.Y. 2013).............................. 17

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)......................................................... 14

*Estate of Soler v. Rodriguez*, 63 F.3d 45 (1st Cir. 1995) ................................................ 4

*Goldberger v. Baker*, 442 F. Supp. 659 (S.D.N.Y. 1977)................................................ 6

*GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.,* 580 F. Supp. 2d 321 (S.D.N.Y. 2008) ...................................................................... 18

*Harrison v. Rubenstein*, 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ........................... 4

*Hemispherx Biopharma, Inc. v. Johannesburg Consolid. Investments*, 553 F.3d 1351 (11th Cir. 2008).................................................................................... 15

*Hershfang v. Citicorp*, 767 F. Supp. 1251 (S.D.N.Y. 1991) ...................................... 10

*ICN Pharm. Inc. v. Khan*, 2 F.3d 484 (2d Cir. 1993) ......................................... 13, 16

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................. 12

**Page(s)**

*In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305 (S.D. Fla. 2010) .................. 19

*In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ............... 4, 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311 (S.D.N.Y. 2009) ................ 12

*In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................. 5

*In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265 (S.D.N.Y. 1988) ........................... 5

*In re Stillwater Capital Partners Inc. Litig.*, 858 F. Supp. 2d 277 (S.D.N.Y. 2012) ................... 12

*Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) ........................... 14

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983) ................................................................. 12

*La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432 (S.D.N.Y. 2010) .................................... 11

*Lanzi v. Brooks*, 54 A.D.2d 1057 (3d Dep't 1976) .................................................................. 20

*Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006) ................................ 17

*Maine v. Thiboutot*, 448 U.S. 1 (1980) .................................................................................... 14

*Mut. Shares Corp. v. Genesco, Inc.*, 384 F.2d 540 (2d Cir. 1967) ............................................ 13

*New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109 (2d Cir. 2007) ............................................................................................................................ 18

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....................................................................................... 19

*Rosenberg v. XM Ventures*, 274 F.3d 137 (3d Cir. 2001) ..................................................... 15, 16

*Ross v. Lloyds Banking Grp., PLC*, 2012 WL 4891759 (S.D.N.Y. Oct. 16, 2012) .................. 5, 6

*Santa Fe Indus. Inc. v. Green*, 430 U.S. 462 (1977) ................................................................. 17

*Silsby v. Icahn*, 2014 WL 1744132 (S.D.N.Y. Apr. 30, 2014) ............................................. 4, 5, 6

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157 (2d Cir. 1999) ...................................................................................................................................... 13

*Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247 (2d Cir. 1973) ......................... 12

*Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, 2010 WL 2835548 (S.D.N.Y. July 13, 2010) ...................................................................................................... 14, 15

**Page(s)**

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007) ...................................................................................................... 5

*Transcon Lines v. A.G. Becker Inc.*, 470 F. Supp. 356 (S.D.N.Y. 1979) .................................... 15

*United States v. Newman,* 664 F.2d 12 (2d Cir. 1981) ................................ 13

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ......................................... 19

**Statutes**

15 U.S.C. § 78j.......................................................................................................... 14

15 U.S.C. § 78m......................................................................................................... 15

**Regulations**

17 C.F.R. § 240.10b-5........................................................................................... 14

17 C.F.R. § 240.13d-3............................................................................................ 15

**Other Authorities**

1 Lou R. Kling & Eileen T. Nugent, *Negotiated Acquisitions Of Companies, Subsidiaries And Divisions*, § 5.03[1] (2014 ed.) .................................... 16

## PRELIMINARY STATEMENT

Cartica concedes in its brief that Section 10(b) regulates disclosure and not the conduct of fiduciaries. This concession renders large swaths of the Amended Complaint superfluous. Yet, just as it did in the Amended Complaint, Cartica spends the bulk of its brief continuing to wage a proxy fight over the relative merits of the proposed merger transaction and would have the Court cast the decisive vote. Cartica effectively asks the Court to decide for itself whether the Court thinks the deal is fair or unfair, to decide on that basis whether CorpBanca's disclosures recommending the deal are "false," and to intervene and stop what Cartica calls the "fraudulent deal" from happening. That is not the function of the Court, nor is it a viable remedy under the securities laws. Section 10(b) and Rule 10b-5 prohibit false or misleading statements of material fact. They cannot be used to unwind a fiduciary decision, as the Supreme Court ruled forty years ago in *Santa Fe*.

The securities laws also do not require the disclosing party to characterize or editorialize on the facts. In this case, it is beyond reasonable dispute that the objective, material facts have been disclosed. Cartica's brief does not point to a single pled fact to the contrary. It relies instead on its oft-repeated mantra that Defendants have misrepresented the relative merits of the deal, in particular whether the merger treats shareholders equally. But that judgment is entrusted to the shareholders of CorpBanca, and the facts on which they can make that judgment are already disclosed. The shareholders must decide for themselves whether they think the deal is attractive. Then they vote.

When stripped of characterizations and labels, Cartica's arguments challenging the disclosure of facts are inactionably thin. It complains that CorpBanca issued disclosures "piecemeal" and not all at once, as soon as the merger was first announced. Taken to its logical conclusion, Cartica's argument would create a rule of law that it is securities fraud to announce a transaction without, at the same time, disclosing every document regarding that transaction. Cartica cites no

authority for this novel contention, and it flies in the face of customary practice in Chile and the U.S., which is to finalize merger-related disclosures some specified period of time before the shareholder vote, not immediately upon the deal announcement.  CorpBanca's shareholder vote has not yet been scheduled.

Cartica tries to bolster its claims by supplementing its Amended Complaint with citations to extraneous materials and with unpled factual averments in its brief.  That is clearly improper.  With regard to the pleadings themselves, the nub of this case lies in the eleven items listed in paragraph 133 of the Amended Complaint, which, as Defendants showed in Appendix A to the opening brief, are immaterial, non-existent, or already disclosed.  Cartica pounds the table in response but its submission is light on substance, barren of support in Cartica's pleadings, and in many instances reflects a continued failure to read the current disclosures before asking for new ones.  Defendants' replies to Cartica's points on these eleven items are set forth in our Appendix B, for the Court's reference.

Cartica mounts no meaningful defense of its flawed and twice-mooted claim under Section 13(d).  Cartica is forced to acknowledge that both CorpGroup and Itaú have made 13D filings referring to Cartica's allegation that they are a "group" and disclaiming it.  Cartica also makes plain that the sole basis for its claim is Section 4.4 of the Transaction Agreement, which has been disclosed for months.  In other words, the shareholders at CorpBanca know all the material facts about CorpGroup's arrangement with Itaú.  Cartica nonetheless argues, against decades of case law, that its claim should survive because CorpGroup has not confessed to "group" status with Itaú.  That is not required.  Moreover, it would be inaccurate as Itaú does not "own" CorpGroup's shares and the entities will not have "group" status until the merger closes.

Cartica's "control person" claim is legally defective and conceptually confused. Section 20(a) provides a remedy for a controlling person's "culpable participation" in a controlled

2

person's fraud.  Cartica concedes that the securities "fraud" in this case is about disclosure.  But Cartica has not alleged the barest fact that either CorpGroup or Mr. Saieh had any participation whatsoever (much less culpable participation) in preparing or disseminating CorpBanca's disclosures regarding the proposed merger.  When pressed, Cartica argues that they participated in "engineer[ing] the Itaú Transaction."  But entering into a merger transaction is not a breach of Section 10(b).  At each turn, Cartica reveals that its real hope is to stop the deal, but that is not the ambit of the federal securities laws.

Cartica's claim for common law fraud should be dismissed as well.  Though Cartica originally premised this claim on the Court's diversity jurisdiction, its brief does not address any of Defendants' arguments demonstrating that diversity jurisdiction does not exist.  Cartica instead asks the Court to exercise supplemental jurisdiction over the claim (which Cartica did not plead), but presents no reason whatsoever why the Court should do so.  If the securities claims are dismissed, this non-federal claim does not belong in this Court or even in a U.S. court.  Cartica can bring its claims regarding its Chilean purchases of Chilean stock in a Chilean bank, if at all, in Chile under governing Chilean law.

## ARGUMENT

**I.     The Section 10(b) Claim Should Be Dismissed**

### A.     Cartica Acknowledges That 10(b) Does Not Regulate Fiduciary Decisions

Cartica acknowledges that under *Santa Fe*, Section 10(b) is not concerned with whether the deal is fair, prudent, or otherwise consistent with an appropriate exercise of judgment by CorpBanca's fiduciaries.  Its sole focus is disclosure.  In Cartica's own words, if Defendants had disclosed "that [Álvaro] Saieh was receiving extra benefits in the transaction with Itaú because he was entitled to a control premium, . . .  Cartica would not have securities claims because the Defendants' statements would not have been materially false and misleading."  Cartica Br. at 2.  Cartica's concession is fatal to its case and renders most of its Amended Complaint atmospheric

surplusage.  Cartica's numerous attacks on the substantive terms of the deal, the appropriateness of which is entrusted to the business judgment of CorpBanca's fiduciaries and the shareholder franchise, are irrelevant.  *See, e.g.*, Am. Compl. ¶ 201 ("Defendants harmed Cartica by initiating and entering [into] the Itaú Transaction"); *also* ¶¶ 3-4, 109-130.  Nor is there any basis for an injunction to save CorpBanca's capital structure from "artificial restraints" or to block what Cartica calls "side benefits" from accruing to CorpGroup.  *Id*. ¶ 213; *also* ¶¶ 127-30.  The only live issue is whether the terms of the deal have been disclosed.  They have.[1]

### B.  The Securities Laws Require Accurate Disclosure Of Material Facts, Not Characterizations Of Those Facts

Cartica's central contention, repeated throughout its brief, is that Defendants falsely stated that the proposed merger "benefit[s] all CorpBanca shareholders equally" when, according to Cartica, it does not.  Cartica Br. at 1.  Cartica claims that, in order to credit this statement, one would have to "pretend . . . that the Shareholders Agreement does not exist."  *Id*. at 19.  Since the Shareholders Agreement has been disclosed (repeatedly), no flights of fancy need be entertained.

"Federal securities laws are designed to promote the disclosure of facts."  *Silsby v. Icahn*, 2014 WL 1744132, at *9 (S.D.N.Y. Apr. 30, 2014).  Disclosure "is not a rite of confession or exercise in common law pleading."  *Data Probe Acquis. Corp. v. Datatab, Inc.*, 722 F.2d 1, 5-6 (2d Cir. 1983).  "So long as a corporation makes disclosure of material objective factual matters, it need not characterize or editorialize on those facts in any particular way."  *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *27 (S.D.N.Y. May 10, 2012); *accord Harrison v. Rubenstein*, 2007 WL 582955, at *13 (S.D.N.Y. Feb. 26, 2007); *Ballan v. Wilfred Am. Educ. Corp*., 720 F. Supp. 241, 249 (E.D.N.Y. 1989).  "The importance of disclosed facts, and any characterizations of or

---

[1]      *Estate of Soler v. Rodriguez*, 63 F.3d 45 (1st Cir. 1995), is not instructive here.  A derivative action, *Soler* concerned allegations that a director of a company concealed from the company's controlling shareholders and other directors (and thus from the company itself) the fact of a sale of the company's stock to an entity controlled by the director and his associates.  *Id*. at 47, 53-54.  Here, the company and its controlling shareholders have *disclosed* a transaction with a third party to all of the company's shareholders.

conclusions drawn from those facts, are matters that are left to the judgment of investors." *Silsby*, 2014 WL 1744132, at *9.

This Court has repeatedly rejected the argument that statements concerning the perceived benefits (or lack thereof) of a transaction are actionable as false statements under the securities laws. *See Ross v. Lloyds Banking Grp., PLC*, 2012 WL 4891759, at *5 (S.D.N.Y. Oct. 16, 2012) (Castel, J.) (rejecting fraud claim based on "optimistic generalizations about the benefits of the acquisition" including that it was "a fantastic deal" and "a great deal for shareholders"); *In re PHLCORP Sec. Tender Offer Litig.*, 700 F. Supp. 1265, 1269 (S.D.N.Y. 1988) (dismissing claim that defendants "falsely characterized the tender offer price as fair and failed to disclose that it was unfair"). Favorable characterizations in disclosure documents are deemed to constitute non-actionable puffery, not statements of material fact. *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 370 (E.D.N.Y. 2013) (characterization of compliance as "best-in-class"); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2007 WL 1138879, at *4 (S.D.N.Y. Apr. 16, 2007) (company's claim to have the "best" channels is non-actionable because it is "inherently subjective").

Defendants' alleged failure to disclose that Mr. Saieh obtained the "extra benefits" in the Shareholders Agreement because he believed "he was entitled to a control premium" (Cartica Br. at 2) is likewise non-actionable. The duty to disclose material facts does not require a party to disclose "culpability or impure motives." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 228 (2d Cir. 2000); *see also Data Probe*, 722 F.2d at 5-6 (disclosing tender offeror's guaranty of employment to the company's existing management was sufficient; management was not required to disclose that the guaranty motivated it to support the tender offer); *CRM*, 2012 WL 1646888, at *27 (no obligation to disclose "alleged ulterior motives for fully described corporate actions").

The reason Defendants have not characterized the merger as treating shareholders unequally or called the Shareholders Agreement or the Itaú loan "extra benefits" is that they do not

believe those labels are accurate.  Whereas Cartica focuses exclusively on the "benefits" of the

Shareholders Agreement, it is fundamental that both parties to a contract must give and receive

consideration.  Contracts confer benefits *and* impose obligations.  Cartica focuses only on the

benefits and ignores CorpGroup's obligations under the Shareholders Agreement, including, by way

of example, restrictions on its sale of CorpBanca shares.  *See* Ex. 8.2 (Shareholders Agreement) §

3.2(d).[2]  Because CorpGroup has partially given up shareholder rights that other shareholders (like

Cartica) freely possess, it negotiated for put and call options, pursuant to which it may buy and sell a

specified number of CorpBanca and other shares in private transactions with Itaú at the market price

at the time of the put.  *Id*. § 5.1.  It thus would be misleading to characterize the Shareholders

Agreement as conferring "extra benefits" without also noting the obligations.  And though Cartica

claims that the loan from Itaú, collateralized by CorpGroup's shares of CorpBanca, is an "extra

benefit" that is not available to Cartica, Cartica simply ignores the disclosures explaining that this

loan is to re-finance existing debt held by third parties with change of control or security interests in

the shares, which could potentially obstruct the deal.  The loan thus facilitates a smooth closing.

   In sum, Cartica invites the Court to reach its own determination about whether the

proposed merger treats shareholders "equally" or whether it confers unfair "extra benefits" on

CorpGroup.  The invitation should be declined.  Under *Santa Fe*, so long as the underlying facts are

accurately disclosed (and they are), it is the job of the shareholders (not the Court) to apply the

appropriate labels to the facts.  *See Ross*, 2012 WL 4891759, at *6 (rejecting claim based on

"optimistic, broad statements about the transaction, not concrete statements of knowable fact");

*Silsby*, 2014 WL 1744132, at *10 (corporation not obligated to describe itself as "insolvent," when it

had disclosed its financial information from which investors could reach their own conclusions as to

solvency); *Goldberger v. Baker*, 442 F. Supp. 659, 664 (S.D.N.Y. 1977) ("Even under the most

---

[2]   Unless otherwise indicated, references to "Ex. __" refer to the Declaration of Joshua M. Slocum, Esq., submitted in connection with Defendants' opening brief.

narrow reading of [*Santa Fe v.*] *Green*, an allegation of deception must allege more than a mere failure to disclose the 'unfairness' of a transaction.").

Thus, even if this Court were to find that shareholders could debate whether all shareholders are "treated equally" in the merger, whether Itaú is an "appropriate" counterparty, or whether the Shareholders Agreement or the Itaú loan confer "extra benefits" or an unfair "control share premium" on CorpGroup, CorpBanca has disclosed the underlying facts to allow shareholders to make their own judgments.  The securities laws do not require CorpBanca to "direct conclusory accusations at itself or to characterize [these facts] in a pejorative manner."  *Ballan*, 720 F. Supp. at 249.  And Defendants are entitled to voice their earnestly-held opinions about the merits of the deal.

**C.      Cartica Has Failed To Allege Any Actionable Misrepresentations Or Omissions**

            1.      <u>Cartica Has Failed To Allege Material Omissions</u>

Defendants' opening brief showed why the additional disclosures that Cartica demands in the Amended Complaint do not constitute actionable omissions.  Def. Br. at 23-24 & Appendix A.  Cartica advances four responses, but none is persuasive.

*First*, regarding Defendants' Appendix A,[3] Cartica contends that it "defies logic" that additional agreements about different aspects of the deal do not exist, but this is sheer speculation, not well-pled facts about actual omissions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  Cartica's incredulity may stem from the fact that it overlooked applicable provisions in the Transaction Agreement.  For example, while Cartica cannot believe that CorpGroup would sell its stake in CorpBanca Colombia without any written agreement, the necessary terms of this sale (such as the price and dates of the sales) are in the Transaction Agreement.  *See* Ex. 17 (Transaction Agreement) §§ 1.2(d), 1.6(h) & sch. 1.6(d).  No additional agreements relating to the sale of

---

[3]      Cartica set forth its responses to the 11 items in our Appendix A in Cartica's Appendix B.  We set forth our replies to each item in our Appendix B, annexed hereto.

CorpBanca Colombia shares by other shareholders exist because no agreements were reached. However, exhibit 2 to the Transaction Agreement is an unsigned form of such agreement.  *Id*. ex. 2. To the extent Cartica disbelieves that parties could agree to take the steps set forth in section 4.16 of the Transaction Agreement to effect an IPO without memorializing the terms of the IPO in advance, Cartica overlooks that IPO documents typically are not signed until the pricing of an offering because they are based on ever-changing market factors.

        *Second*, Cartica claims that the description of negotiations with alternative merger partners in the June Disclosure Document (Ex. 16) remains "incomplete" because it does not describe the "side benefits" Mr. Saieh supposedly demanded.  Cartica Br. at 22.  This is just another way of saying CorpBanca did not accuse itself or Mr. Saieh of wrongdoing.  While Cartica says CorpBanca must disclose "material side agreements" with other bidders (Cartica Br. at B-3), the Disclosure Document already states that two bidders (C and D) were not invited into the second round of the process, in which drafts of a Shareholders Agreement were exchanged, and states whether alternative proposals included a purchase of CorpBanca Colombia shares, and for how much.  Ex. 16 at 63-65. To the extent Cartica wants to see the unfinished draft agreements that were exchanged with the third alternative bidder (Party B) but never finalized (*see id*.), Cartica cites no federal securities cases ever requiring such a granular level of disclosure regarding other bids.

        *Third*, Cartica notes that amendments to certain related-party agreements were disclosed in CorpBanca's Disclosure Document but claims that the agreements themselves have never been disclosed.  Cartica Br. at 22.  Wrong again.  Cartica apparently neglected to read CorpBanca's 20-F, which describes the amendments to the related-party agreements and attaches copies of the agreements.  Ex. 10 (2013 Form 20-F) at 196-97, 256 (listing exhibits).[4]

---

[4]     A regrettable theme is emerging here.  Cartica is either not reading the disclosures or simply misstating what they say.  Its argument is also hard to reconcile with the Amended Complaint, which alleges that these service agreements were attached to the 20-F.  Am. Compl. ¶ 131.

*Fourth*, Cartica argues that (i) it is "demonstrably false" that all shareholders will be treated equally in the merger, (ii) there has been insufficient disclosure about the "extent" of the conflict of interests between CorpGroup and the minority shareholders, and (iii) there has been no disclosure of the specific conflicts the Board considered.  Cartica Br. at 22-23.  The first is a difference of opinion not an issue of fact.  *See* Section I.B, *supra*.  The second contention is similarly meritless.  The material facts about CorpGroup's interests have been disclosed; there is no obligation to editorialize about them.  *See Data Probe*, 722 F.2d at 5-6.  The final contention again ignores existing disclosures.  The "different interests" of CorpGroup that the CorpBanca Board considered (and which Cartica claims to be undisclosed) are listed on page 71 of the June Disclosure Document cited by Cartica.  Cartica Br. at 23; Ex. 16 at 71.

Cartica advances the *non sequitur* that recent disclosures about additional fairness opinions being commissioned (but not yet completed) "put the lie" to Defendants' observation that the material facts about the Shareholders Agreement and the Itaú loan have been disclosed.  Cartica Br. at 18-19.  This is grasping at straws.  First, neither fairness opinion has been completed yet and therefore cannot be disclosed.  Second, a fairness *opinion* by definition reflects the view of the entity that provides it; it does not change the core facts that are being reviewed.  One senses that Cartica's wishlist of disclosures will grow to capture each new developing event and ever more inconsequential levels of detail—whatever it takes to try to keep its lawsuit alive and keep issuing press releases in its ultimate quest for a personal payout.

## 2.    Cartica Has Failed To Allege Material Misrepresentations

When boiled down to its essence, Cartica's Amended Complaint alleges six supposed misstatements pre-merger and five supposed misstatements post-merger.  Am. Compl. ¶¶ 134, 147-168.  The primary "fraud" that Cartica focuses on in its opposition relates to the supposed misstatement that "all shareholders are being treated equally."  Cartica Br. at 8, 10, 16 and 21.  This was allegedly stated once before the merger announcement and twice after.  The pre-merger

statement is based solely on Cartica's say-so.   Mr. Álvaro Saieh allegedly said in a private meeting

with Cartica that "he and the Bank were seeking a transaction that provided the maximum benefit to

all shareholders and would not seek any special benefit for himself."  Am. Compl. ¶ 149.  This is a

non-actionable statement of future intention and opinion.  *See Hershfang v. Citicorp*, 767 F. Supp.

1251, 1256-57 (S.D.N.Y. 1991) (statement non-actionable where "defendants were simply expressing

their views about anticipated events").  The first of the two post-merger statements was made by Mr.

Jorge Saieh on a conference call.  *See* Am. Compl. ¶ 153.  Cartica does not provide the Court with a

transcript of this call.  However, a recording is available on CorpBanca's website,[5] and a transcript

was prepared, which place Mr. Jorge Saieh's comments into full context:

> [T]his is a transaction where we as the controllers do not get any premium for control,
> . . . shareholders are going to receive the same . . . exactly the same, here in Chile and
> in Colombia.  Everybody is going to receive the exchange ratio and everybody is
> going to receive the same payment for . . . if they want to sell their proportion in
> CorpBanca Colombia.

Declaration of Rita K. Maxwell, Esq., Ex. 1 (January 29, 2014 Call Trans.) at 4.  Mr. Jorge Saieh's

words do not constitute actionable fraud.  They are a straightforward statement of his opinion and the

facts on which he is basing it.  The second post-merger statement was in a March 4, 2014 release by

CorpGroup, the full text of which Cartica also does not provide to the Court.  Am. Compl. ¶ 154.

This letter states in relevant part that  the proposed merger "is subject to the shareholders' approval,

and was structured in such a way that the benefit would be the same for all of them.  All shareholders

rank *pari passu* with regard to the exchange ratio in the merger."  Maxwell Decl., Ex. 2.  This letter

thus reiterates the view that shareholders receive the exchange ratio benefits in the transaction.

Viewed in their totality, these statements are not fraudulent.  Cartica tries to tear them from their

context (or fails to provide the context), but the statements actually reflect the respective speakers'

opinions based on the facts of the deal structure.

---

[5]     Available at: http://corpbanca.irwebpage.com/webcast_2014-Jan.html# (last visited July 28, 2014).

Another alleged post-merger misstatement relates to the Itaú loan.  Am. Compl. ¶¶ 134, 151.  Defendants already refuted Cartica's attempt to distort the disclosures about the loan into a material misstatement.  Main Br. at 13 (explaining that CorpGroup had a preexisting $250 million loan from Itaú and obtained the additional $950 million to facilitate the merger).  Cartica ignores this point entirely, choosing instead to harp on this as a "knowing" misstatement.  Cartica does not attempt to explain, as it must, why disclosing only the deal-specific amount in the initial, one-page *hecho essencial* would have defrauded anyone, and Cartica ignores the straightforward explanation that appears prominently in two places in the Disclosure Document.  Ex. 16 at 5, 71.[6]  Cartica's convoluted argument concerning misrepresented draw-downs is itself a misreading of the credit agreement.  As set forth in Section Three.Two, the first draw-down "may be disbursed by Debtor from the date hereof until September 30, 2014, inclusive."  Ex. 12 (13D) at ex. G § Three.Two.

It is not controversial that "once a party chooses to speak, it has a duty to be both accurate and complete."  *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 440 (S.D.N.Y. 2010).  Cartica stretches this principle to the breaking point, however, arguing that once a merger or any of its terms is announced, it is fraud not to disclose all material facts immediately (and not "piecemeal") because otherwise, the initial disclosure would be "incomplete."  Cartica Br. at 18.  That is not the law.[7]  In Chile, a merger party must disclose the material facts about the deal at least 15 days in

---

[6]     The other two alleged post-merger misstatements simply characterize the merger terms as "stock-for-stock" and the loan as having "customary terms and conditions."  Am. Compl. ¶¶ 152, 155.  The full terms of each are public.  Cartica's other five pre-merger alleged misstatements (Am. Comp. ¶¶ 140-43, 147) go nowhere.  Cartica says that CorpBanca should have disclosed that Mr. Saieh was engaged in a fraudulent scheme to shop the Bank to obtain personal benefits for himself.  No company is required to do this.  Cartica also claims that Defendants "concede[d]" these allegations because they were not specifically refuted in the opening brief.  Cartica Br. at 18 n.7.  Not so.  The reason they were not addressed individually is because the opening brief was 35 pages long and addressed an 85-page Amended Complaint (much of which Cartica had neglected to update following CorpBanca's late-May disclosures).  But these allegations were covered conceptually.  Defendants showed they are irrelevant because, following the merger announcement, the material facts were disclosed (Main Br. at 26), and Defendants need not characterize the deal pejoratively or self-flagellate (*id.* at 22).

[7]     The cases Cartica cites (Br. at 20 n.12) involve vague or scattered disclosures in documents that, by law, are supposed to contain the material facts.  None addresses the preliminary announcement of the merger

advance of the shareholder vote, not on the day the merger is announced.  In the U.S., the final proxy is typically mailed about a month before the vote.

### D.   Cartica Cannot Obtain A Permanent Injunction Of The Merger Under Section 10(b) Due To Alleged "Pre-Deal Misrepresentations"

Cartica's brief states that "[n]o amount of disclosure can remedy" the harm allegedly suffered by Cartica from misstatements that occurred before the deal was announced.  Cartica Br. at 1.  According to Cartica, "[t]hat harm can be undone only through an injunction preventing the merger."  Am. Compl. ¶ 126.  In other words, Cartica asks the Court to unwind *permanently* the fiduciary decision of CorpBanca's Board of Directors to approve the merger because Cartica, a minority investor in a controlled company, was supposedly deprived of the opportunity to wage a PR campaign attacking the terms of the merger or file a lawsuit before those terms were even finalized, much less announced.[8]  Cartica has no authority that supports its extravagant position.  Cartica Br. at 23-24.[9]  Such a proposition directly contravenes the Second Circuit's instruction that "a permanent, as distinguished from corrective, ban against participation in a takeover should rarely, if ever, be

---

or the completeness of disclosures before the official pre-merger disclosures were published.  *In re Stillwater Capital Partners Inc. Litig.*, 858 F. Supp. 2d 277, 287 (S.D.N.Y. 2012) (alleged misstatement in proxy statement); *In re Alstom SA*, 406 F. Supp. 2d 433, 453 & n.11 (S.D.N.Y. 2005) ("varying and vague terminology" in annual statements made it "virtually impossible to discern" the material information); *Kennedy v. Tallant*, 710 F.2d 711, 720 (11th Cir. 1983) (alleged misstatement in prospectus); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 325 (S.D.N.Y. 2009) (same); *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 353-54 (D. Del. 1977) (same); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 364-66 (2d Cir. 1973) (reasons given in recommendation to shareholders not to accept tender offer were misleading).

[8]      As set forth in Defendants' opening brief, if a shareholder is deprived of the opportunity to seek to enjoin a merger before it closes (which Cartica obviously is not), that might give rise to a claim for damages under 10(b).  Main Br. at 26-27.  But Cartica cannot sue for damages under Section 10(b) because of *Morrison* and *Blue Chip Stamps*, which bar extraterritorial and "holder" claims, respectively.  Cartica's only purchases in alleged reliance on any misstatements were made in Chile; Cartica neither purchased nor sold ADRs during this period.

[9]      Cartica's cited cases are off-base.  In *Sonesta International Hotels Corp. v. Wellington Associates*, the Second Circuit directed the district court "to enter a preliminary injunction enjoining the consummation of the offer unless [the offeror] makes a supplemental disclosure to [the target's] stockholders."  483 F.2d 247, 255 (2d Cir. 1973).  *Crane Co. v. American Standard, Inc.* involved a damages claim brought by a defeated tender offeror for misrepresentations in a proxy statement.  603 F.2d 244, 250 (2d Cir. 1979).

imposed because of securities law violations, and certainly only as a last resort." *ICN Pharm. Inc. v. Khan*, 2 F.3d 484, 490 (2d Cir. 1993).

Cartica's argument that it is harmed by "Post-Deal Misrepresentations" fares no better. Cartica states that its ability as a shareholder "to vote knowledgeably for or against the Itaú Transaction" is impaired.  Cartica Br. at 21 n.13.  But Cartica has already made clear that it is voting against the deal and that it has all the information it needs to cast its "no" vote.  There is no ongoing harm to Cartica, and it does not represent or purport to represent any other shareholders.  Indeed, Cartica's interest in trying to stop the deal conflicts with the interests of other shareholders who like the deal, and its claim for an individual payout from CorpBanca puts it at odds with other current shareholders, who would be harmed by such a payout.

### E. The Case Law In This Circuit Holding That The Purchase Or Sale Requirement Does Not Apply To Claims For Injunctive Relief Is Wrongly Decided

Cartica concedes that it did not purchase or sell any ADRs during the time period in question.  Cartica relies instead on case law stating that Section 10(b)'s purchase or sale requirement is not strictly applied to claims for injunctive relief.  In these cases, the Second Circuit reasoned that, in addition to the SEC, "present stockholders are also logical plaintiffs to play an important role in enforcement of the [Exchange] Act."  *Mut. Shares Corp. v. Genesco, Inc.*, 384 F.2d 540, 547 (2d Cir. 1967).[10]  But a long line of Supreme Court precedent teaches that "the starting point in every case

---

[10]     Three Second Circuit cases cited by Cartica on the purchaser/seller issue post-date *Blue Chip Stamps*. But none of them squarely considered a private claim to enjoin a transaction brought by a non-purchaser or non-seller.  *Crane Co. v. American Standard, Inc.* held that a disappointed tender offeror lacked standing to sue for damages but stated in dicta that it could have sought an injunction.  603 F.2d 244, 249-51 (2d Cir. 1979).  The issue before the Second Circuit in *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157 (2d Cir. 1999), was whether a defeated tender offeror had violated Rule 11 by seeking an injunction under Section 10(b) despite not having purchased or sold securities.  The Second Circuit merely found that, based on pronouncements in *Genesco* and *Crane*, the plaintiff had a good faith basis to bring the claim.  It acknowledged that in some future decision, the purchase or sale requirement "may one day be extended to cases involving external competitors for corporate control" and clarified that in the case before it "we do not hold that [plaintiff] had standing to seek an injunction; that issue is not before us."  *Id.* at 171. *United States v. Newman* involved a criminal prosecution, not a private claim, and the defendant *had* engaged in purchases and sales of securities based on inside information.  664 F.2d 12, 15-16 (2d Cir. 1981).

involving construction of a statute is the language itself." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

197 (1976) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J.,

concurring)).  If the statutory mandate is clear, a court must apply it.  *Dunn v. Commodity Futures*

*Trading Comm'n*, 519 U.S. 465, 470 (1997).

Section 10(b) prohibits fraud "in connection with the purchase or sale of any security."

15 U.S.C. § 78j(b).  This statutory language is not ambiguous and it is not qualified in any way.  *See*

*Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (rejecting judicially imposed limitation on statutory phrase

when "Congress attached no modifiers to the phrase").  Congress did not carve out claims for

injunctive relief.  Under Supreme Court precedent, that ends the inquiry and requires dismissal of

Cartica's claim.  If that were not enough, Rule 10b-5 repeats verbatim the same unqualified,

unambiguous statutory requirement.  17 C.F.R. § 240.10b-5; *see also Janus Capital Grp., Inc. v. First*

*Derivative Traders*, 131 S. Ct. 2296, 2302-03 & n.8 (2011) (applying plain language of Rule 10b-5

where it was found not to be ambiguous).  Though the Second Circuit has not abrogated *Genesco* or

the post-*Blue Chip Stamps* cases that have reaffirmed its principles in dicta, we respectfully submit

that these cases are inconsistent with the plain text of the statute, Supreme Court precedent on

statutory construction, and in particular, the Supreme Court's holding in *Blue Chip Stamps*, which

adopted the purchase and sale requirement in a damages action under Section 10(b) and Rule 10b-5.

## II.     Cartica's Twice-Mooted 13(d) Claim Is Meritless

Cartica argues that CorpGroup's amendment to its Schedule 13D filing, which

disclosed Cartica's belief that CorpGroup and Itaú have formed a group (and CorpGroup's view that

they had not), is deficient because it failed to *admit* that a group had been formed.  Cartica overlooks

established law within this Circuit that a party need not "admit allegations that it denies."  *Taro*

*Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, 2010 WL 2835548, at *13 (S.D.N.Y. July 13, 2010).

As *Avnet, Inc. v. Scope Industries* makes clear, where a genuine dispute exists as to whether the

information plaintiff alleges must be disclosed is a fact, "disclosure of the possibility of the alleged

14

fact, and the conflicting positions taken by the parties" is sufficient.  499 F. Supp. 1121, 1125 (S.D.N.Y. 1980); *see also Taro*, 2010 WL 2835548, at *10-14 (collecting cases).

Here, Defendants dispute that CorpGroup and Itaú have formed a group under Section 13(d).  Yet Defendants have disclosed the "possibility" of the alleged group through disclosure of Cartica's position, and their own position in response, and the material facts on which the dispute is based.  Significantly, Cartica makes plain that the sole basis for its "group" claim is Section 4.4 of the Transaction Agreement, which was publicly posted in March 2014.  As such, Cartica's Section 13(d) claim is moot and must be dismissed.  *See Avnet*, 499 F. Supp. at 1126 (dismissing 13(d) claim where company disclosed allegation that it was an "investment company" in amended Schedule 13D).

Moreover, far from simply being a good faith "dispute" over whether a CorpGroup-Itaú group exists here, the reality is that no such group exists under the securities laws.  Only beneficial owners of shares are subject to Section 13(d) reporting obligations, whether as an individual or as a group member. 15 U.S.C. § 78m(d)(1); *Hemispherx Biopharma, Inc. v. Johannesburg Consolid. Investments*, 553 F.3d 1351, 1361-66 (11th Cir. 2008); *Rosenberg v. XM Ventures*, 274 F.3d 137, 144-47 (3d Cir. 2001); *Transcon Lines v. A.G. Becker Inc.*, 470 F. Supp. 356, 372-74 (S.D.N.Y. 1979).  Under SEC rules, a beneficial owner includes someone with "voting power . . . and/or investment power" over a security.  17 C.F.R. § 240.13d-3(a)(1)-(2).  Itaú has neither power over CorpGroup's shares.  The Transaction Agreement requires CorpGroup to vote its shares in favor of the transaction and to not dispose of its shares in a manner that would result in CorpGroup "not having the full and exclusive ability to vote" its shares.  Ex. 8.1 (Transaction Agreement) § 4.4(g).  It does not grant Itaú voting power over the shares on general corporate issues like the election of directors through a proxy or any other means.  It does not allow Itaú to sell or transfer CorpGroup's shares.  CorpGroup remains the sole beneficial owner of its shares.

Cartica's argument that any party that enters into a merger agreement with a covenant to vote its shares in favor of the merger forms a "group" with its counterparty misconstrues 13(d) and is inconsistent with customary practice in mergers and acquisitions. *See* 1 Lou R. Kling & Eileen T. Nugent, *Negotiated Acquisitions Of Companies, Subsidiaries And Divisions*, § 5.03[1], n.9 (2014 ed.) (customary covenants "in which a significant shareholder in a company agrees to vote its shares in support of a business combination" do not give the acquiror beneficial ownership of such shareholder's shares).  Because Itaú does not beneficially own the shares, it cannot form a "group" with CorpGroup. *Rosenberg*, 274 F.3d at 147 (holding that "each member of a section 13(d) group must hold beneficial ownership of the shares of the issuing entity prior to becoming a section 13(d) group member").[11]

Finally, Cartica does not attempt to demonstrate irreparable harm for its 13(d) claim. Because there is ample time for shareholders to digest the information in CorpBanca's Schedule 13D and the amendment thereto, Cartica cannot show irreparable harm as a matter of law and the claim must be dismissed.  *ICN*, 2 F.3d at 489.  Indeed, the decisions cited by Cartica in its appendix of Section 13(d) cases show "digestion" periods of seven, ten, and 30 days.  *See* Cartica Br. at D-1, D-2. The market will have had the relevant 13D filings for *months* before the shareholder vote occurs.

## III.    The 20(a) Claim Fails Because Cartica Does Not Allege That Any "Controlling Persons" Participated In Preparing Or Disseminating CorpBanca's Disclosures

On the underlying 10(b) claim, Cartica was forced to get in line with *Santa Fe* and agree that 10(b) is only about disclosure.  Cartica Br. at 15.  However, in arguing that Mr. Saieh and CorpGroup were culpable participants in the 10(b) violation, Cartica reverts, claiming that the underlying fraud was to "engineer[] the Itaú Transaction . . . to bleed the Bank of significant short- and long-term value."  *Id*. at 30.  CorpBanca's decision to enter into the Transaction Agreement, and

---

[11]    Defendants also join and adopt the arguments regarding Section 13(d) set forth in the Memorandum of Itaú Defendants in Support of Their Motion to Dismiss Under Rules 12(b)(2), (5), and (6), filed on July 10, 2014, and in their Reply filed on July 28, 2014.  (ECF Nos. 79, 106.)

on what terms, is a fiduciary one.  As Defendants established, Section 10(b) cannot be used to invoke

the jurisdiction of U.S. federal courts to challenge fiduciary conduct in the negotiation of merger

transactions.  *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 479-80 (1977).  A claim for fraud pertains

only to the disclosures, and nothing else.

        Cartica fails to allege 20(a) "controlling person" activity with respect to the alleged

misstatements and disclosures.  "Second Circuit precedent . . . hold[s] that 'culpable participation' is

a pleading requirement to state a section 20(a) claim, and that . . . a section 20(a) claim must allege, at

a minimum, *particularized facts* of the controlling person's conscious misbehavior or recklessness."

*Lapin v. Goldman Sachs Grp., Inc*., 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (emphasis added);

*Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 229 (S.D.N.Y. 2013) ("A plaintiff's

allegation that a control party culpably participated in a fraud must be stated with particularity.").[12]

The Amended Complaint contains only conclusory allegations regarding Mr. Saieh and CorpGroup's

mental state regarding CorpBanca's disclosures.  For example, the Amended Complaint alleges

generally that "each Defendant was aware of the Bank's dissemination of information to the investing

public" and that "Defendants had actual knowledge of the misrepresentations and omissions of

material fact[]."  Am. Compl. ¶¶ 203-04.  But this does not meet the standard.  Cartica does not allege

any particularized facts indicating that Mr. Saieh or CorpGroup had any involvement (culpable or

not) in causing CorpBanca to issue the allegedly misleading disclosures.  Nor can it.  The disclosures

were prepared and released by CorpBanca, not by Mr. Saieh or CorpGroup.

---

[12]     While there is disagreement among lower court decisions in this Circuit, Defendants submit that the
more persuasive authority is that the entirety of a Section 20(a) claim is subject to the heightened pleading
requirements, particularly where, as here, the primary violation is subject to heightened pleading standards.

**IV.    Cartica's Common Law Fraud Claim Should Be Dismissed**

    **A.    Because Cartica's Securities Claims Fail, The Common Law Fraud Claim Should Be Dismissed On Jurisdictional Grounds**

        1.    <u>The Court Lacks Jurisdiction Over The Common Law Fraud Claim</u>

Faced with undeniable arguments that there is no diversity jurisdiction in this case because there are foreign parties on both sides, Cartica goes silent on the issue.  Instead of admitting that its jurisdictional pleading was plainly erroneous, Cartica ignores the point and invents a new jurisdictional hook—supplemental jurisdiction—that appears nowhere in the Amended Complaint. Cartica argues that it is of "no moment" that it did not plead supplemental jurisdiction and requests that the Court retain jurisdiction over its fraud claim even if the securities claims are dismissed. Cartica Br. at 35 & n.37.  Cartica fails to advance a single reason why this Court should entertain a common law fraud claim arising out of a Chilean controversy.  Cartica's federal securities claims are meritless for the reasons set forth above, and "[i]n general, where federal claims are dismissed before trial, the state claims should be dismissed as well."  *New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007); *see also GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.,* 580 F. Supp. 2d 321, 334 (S.D.N.Y. 2008).  The Court should decline to exercise supplemental jurisdiction.

        2.    <u>Dismissal is Warranted on *Forum Non Conveniens* Grounds</u>

Cartica addresses Defendants' *forum non conveniens* arguments only in a footnote, arguing that because its fraud claim has been cabined into one alleged statement made in New York, dismissal is unwarranted.  Cartica Br. at 35.  Cartica fails to acknowledge Defendants' showing that the factors weigh heavily in favor of a Chilean forum.  These include CorpBanca's Chilean headquarters, Mr. Saieh's residence in Chile, the Chilean locus of the merger, and Cartica's purchase of stock in Chile.  Main Br. at 34-35.  Defendants' documents and witnesses are located in Chile. The Chilean courts can adjudicate this claim, and Chilean law governs the claim.  Cartica cites only a

perfunctory connection to New York, where D.C.-located Cartica is not even based.  The fraud claim

should be dismissed in favor of a Chilean forum.

    **B.**    **Cartica Has Failed To State A Claim Under Chilean Or New York Law**

        1.    <u>Chilean Law Applies And Requires Dismissal</u>

        Cartica argues that New York state law applies and not Chilean law on the basis that

the alleged misstatement for which it wants money supposedly occurred during a meeting in New

York.  Cartica Br. at 31.  Cartica's arguments contravene New York's choice of law analysis, which

favors the law of the jurisdiction with the greatest interest in the specific issue raised in the litigation.

Here, Cartica alleges a fraudulent scheme that originated in Chile, was orchestrated out of Chile, and

induced Cartica to invest in Chile.  In these circumstances, courts apply the law of the locus of the

alleged fraudulent scheme.[13]  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399-400

(S.D.N.Y. 2010).  In addition, Cartica's arguments overstate its Amended Complaint.  Nowhere does

Cartica allege that it is a citizen of, or has any other significant connection with, New York, and

nowhere does Cartica allege that it has suffered injury in New York.[14]  Cartica would have the Court

put blinders on to ignore the alleged scheme orchestrated out of Chile in an artificial effort to carve

out a single statement in New York because Cartica wants to keep its suit alive in New York.  But the

jurisdiction with the most interest in this litigation is Chile, and Chilean law should therefore apply.

Cartica does not attempt to contest Defendants' showing that the Amended Complaint fails to state a

valid claim for fraud under Chilean law, which is detailed in Mr. Ossa's declaration.

---

[13]    Cartica relies on *Cromer Financial Ltd. v. Berger*, 137 F. Supp. 2d 452, 192-93 (S.D.N.Y. 2001), whose application of New York law to foreign conduct has been called into question post-*Morrison* given the de-emphasis on U.S. regulation of foreign securities transactions.  *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1342 (S.D. Fla. 2010) ("Perhaps because of the presence of federal securities claims, which no longer exist in this action . . . *Cromer* may have overweighed New York's interest in the choice of law analysis.").  Cartica's other case, *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F. Supp. 2d 163, 194 (S.D.N.Y. 2006), applied the law where the torts were allegedly "masterminded and executed."  That principle counsels in favor of Chilean law.

[14]    A plaintiff cannot amend its complaint through its brief in opposition to a motion to dismiss.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

2.      Cartica Fails To Plead A Fraud Claim Under New York Law

Even if New York law applies, Cartica has failed to state a claim.  In its opposition

brief, Cartica only responds to Defendants' arguments that Cartica has failed to allege actionable

misstatements and that Cartica has failed to allege justifiable reliance.[15]  Cartica argues that Mr.

Saieh's December 9, 2013 statement was either a false statement of fact or an actionable opinion or

statement of future intent.  Yet Cartica's argument misses the mark.  As set forth in Section I.B

above, these characterizations of deal terms, which at that time were far from final, are not actionable

misstatements.  In addition, there are no factual allegations sufficient to show that Mr. Saieh's views

about the inchoate deal were false at the time they were expressed.  *See Lanzi v. Brooks*, 54 A.D.2d

1057, 1058 (3d Dep't 1976) ("A complaint based upon a statement of future intention must allege

facts to show that the defendant, at the time the promissory representation was made, never intended

to honor or act on his statement.").

Cartica appears to argue that its reasonable reliance is established by the fact that it is

a rational investor and, in response to market rumors of a significant transaction, sought inside

information from Mr. Saieh about the proposed transaction under negotiation and proceeded to trade

on it.  Cartica Br. at 32.  It is a doubtful proposition at best that the law considers it *reasonable* to

trade improperly based on private conversations with a controlling shareholder.[16]

## CONCLUSION

For these additional reasons, Cartica's invitation to the Court to cast the deciding

vote in its proxy fight against the proposed merger with Itaú Chile should be declined and its

meritless lawsuit dismissed.

---

[15]     Defendants also demonstrated that (1) there is no showing that CorpBanca or Mr. Saieh intended for Cartica to take any trading position regarding the merger, and (2) there is no basis for asserting that CorpBanca authorized Mr. Saieh's statements or vice versa. Main Br. at 32-33.  Cartica does not contest either point.

[16]     It is telling that Cartica traded in Chile on what it believed it learned from Mr. Saieh, which would avoid the reach of Section 10(b) and Rule 10b-5 under *Morrison*, rather than by purchasing ADRs in New York.  Cartica's plans for a quick profit on a hoped-for tender offer did not materialize, and its state law fraud claim is nothing more than an effort to extract a personal payout.

Dated: New York, New York
      July 28, 2014

Respectfully submitted,

*Lynn K. Neuner*

Lynn K. Neuner
Peter E. Kazanoff
Joshua M. Slocum
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendants CorpBanca, Álvaro*
*Saieh Bendeck, Corp Group Banking S.A.,*
*and Compañía Inmobiliaria y de Inversiones*
*Saga Limitada SPA*